# In the United States Court of Appeals for the Fourth Circuit

---

FLOR I. ARRIAZA DE PAREDES;
FRANCISCO HERNAN TEJADA LOPEZ,

*Plaintiffs-Appellants*,

v.

ZEN NAILS STUDIO LLC; PHONZ NGUYEN;
LIHN NGUYEN,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

---

# OPENING BRIEF OF APPELLANTS

---

OMAR VINCENT MELEHY
ANDREW BALASHOV
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Telephone: (301) 587-6364
Email: ovmelehy@melehylaw.com

MATTHEW B. KAPLAN
The Kaplan Law Firm
1100 N Glebe Road, Suite 1010
Arlington, VA 22201
Telephone: (703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com

*Attorneys for Appellants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUE ............................................................... 1

STATEMENT OF THE CASE ............................................................... 2

STATEMENT OF THE FACTS ............................................................. 3

   The Underlying Case ..................................................................... 3

   The Appellants' Evidence of Prevailing Market Rates ..................... 7

   The Trial Court's Decision ............................................................. 11

SUMMARY OF THE ARGUMENT ...................................................... 12

ARGUMENT ...................................................................................... 12

   I.   THE TRIAL COURT COMMITTED A CLEAR ERROR OF LAW
      WHEN IT BASED ITS FEE AWARD ON AN ARBITRARY NINE-YEAR-
      OLD MATRIX, INSTEAD OF PREVAILING MARKET RATES, AS THE
      SUPREME COURT REQUIRES .................................................... 12

   II.   ALTERNATIVELY, THE COURT ABUSED ITS DISCRETION WHEN
      IT BASED ITS FEE AWARD ON AN ARBITRARY NINE-YEAR-OLD
      MATRIX, AND LARGELY IGNORED APPELLANTS' EVIDENCE THAT
      THE MATRIX WAS WELL BELOW MARKET RATES ............................ 18

CONCLUSION .................................................................................... 25

REQUEST FOR ORAL ARGUMENT ................................................... 25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS .......... 27

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
CERTIFICATE OF SERVICE ............................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Bell v. Clackamas Cty.,* 341 F.3d 858 (9th Cr. 2003)..............................................15

*Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec Gmbh*, 505 F. App'x 281 (4th Cir. 2013) ................................................................................................................24

*Blum v. Stenson*, 465 U.S. 886 (1984) ....................................................................14

*Carranza v. Ramirez*, No. PWG 20-cv-2687, 2022 U.S. Dist. LEXIS 161253 (D. Md. 2022) ..........................................................................................................23

*Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049 (9th Cir. 2009)..............15

*Cisson v. C.R. Bard, Inc. (In re C.R. Bard, Inc.)*, 810 F.3d 913 (4th Cir. 2016).....13

*D.L. v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019)..................................16

*Daly v. Hill*, 790 F.2d 1071 (4th Cir. 1986)...................................................... 18, 19

*Doe v. Kidd*, 656 F.App'x 643 (4th Cir. 2016) ........................................................24

*E. Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561 (4th Cir. 2013)......... 14, 24

*Farbotko v. Clinton Cty.*, 433 F.3d 204 (2d Cir. 2005) ...........................................24

*Ford v. Rigidply Rafters*, 999 F. Supp. 647 (D. Md. 1998)......................................5

*Grissom v. the Mills Corp.*, 549 F.3d 313 (4th Cir. 2008) ......................................16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................14

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............23

*Lee v. Agape Health Mgmt., Inc*., Nos. 23-1582, 23-1586, 23-1636 and 23-1647,

    2024 U.S. App. LEXIS 18670 (4th Cir. July 29, 2024) ......................................15

*Loughner v. Univ. of Pittsburgh*, 260 F.3d 173 (3d Cir. 2001) ..............................24

*Mancilla v. Chesapeake Outdoor Servs., LLC*, No. 1:22-cv-00032-JMC, 2024 U.S.

    Dist. LEXIS 96777 (D. Md. 2024) ..........................................................................5

*McClain v. Lufkin Indus*., 649 F.3d 374 (5th Cir. 2011) ........................................24

*Missouri v. Jenkins*, 491 U.S. 274 (1989)......................................................... 15, 19

*Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219 (4th Cir.

    2009) ...................................................................................................................... 14, 19

*Ohio River Valley Envtl. Coalition, Inc., v. Green Valley Coal Co.,* 511 F. 3d 407

    (4th Cir. 2007) .........................................................................................................19

*Orellana v. ACL Cleaning, LLC*, Civil Action No. DKC 19-2318, 2022 U.S. Dist.

    LEXIS 151039 (D. Md. 2022)..................................................................................9

*Plyler v. Evatt*, 902 F.2d 273 (4th Cir. 1990) ........................................................14

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235  (4th Cir. 2009)...................14

*Rum Creek Coal Sales v. Caperton*, 31 F.3d 169 (4th Cir. 1994) ................... 14, 19

*Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir. 1992) ..................................................21

*United States v. Delfino*, 510 F.3d 468 (4th Cir. 2007) ..........................................19

*United States v. Hedgepeth*, 418 F.3d 411 (4th Cir. 2005).....................................19

*United States v. Williams*, 461 F.3d 441 (4th Cir. 2006)........................................19

*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018) ..........................13

**Rules**

Loc. R. App'x B, at 3.b (2001, 2008, and 2014

versions), https://www.mdd.uscourts.gov/local-rules-prior-versions ...................6

Local Rules for the Maryland Bankruptcy Court, Ver. 23.05-24.03 (December 1,

2023), Appendix F ................................................................................................6

U.S. Dist. Ct., D. Md., Local Rules, Appendix B (D. Md. Jul.

2023), https://www.mdd.uscourts.gov/local-rules ................................. 4, 5, 6, 13

STATEMENT OF JURISDICTION

The United States District Court for the District of Maryland (hereinafter the "trial court") had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, as the claims arose under the laws of the United States, specifically the Fair Labor Standards Act of 1930, 29 U.S.C. §§ 201, *et seq*. ("FLSA").

Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction to hear the appeal of the trial court's November 28, 2023, decision granting in-part and denying in-part the Appellants' Motion for Attorney's Fees and Costs. On December 18, 2023, Appellants filed a timely Notice of Appeal with the trial court. This appeal is from a final judgment.

STATEMENT OF THE ISSUE

Whether the trial court made an error of law (or abused its discretion) when, contrary to Supreme Court precedent, it determined that a nine-year-old court-created matrix (Appendix B of the Local Rules) reflected current market rates, the matrix had not been adjusted for inflation in nine years and the trial court all but ignored Appellants' largely unrefuted market rate evidence, simply because it was contrary to Appendix B?

<h1 style="text-align:center">STATEMENT OF THE CASE</h1>

On August 24, 2020, Appellants Flor I. Arriaza De Paredes and Francisco Hernan Tejada Lopez (hereinafter "Appellants") filed suit against Appellees (their former employers) alleging they failed to pay their overtime and minimum wages for all hours worked in violation of the FLSA and the Maryland Wage and Hour Law ("MWHL"), MD. CODE ANN., LABOR & EMPL. ART. §§ 3-415 and 3-427. JA022-028.

After three years of litigation and a five-day bench trial, the trial court awarded Appellants $66,991.64 in unpaid wages and liquidated damages. JA151. Appellants timely moved for an award of attorneys' fees and costs. Appellants relied upon declarations, a billing survey, and other evidence to support their claim that the hourly rates they sought were prevailing market rates. JA242-281. The trial court awarded Appellants' counsel $167,115.49 in attorneys' fees, at the rates set forth in what was then a nine-year-old[1] fee matrix in Appendix B of the District Court's Local Rules (hereinafter "Appendix B"). JA809, JA816. This appeal followed.

---

[1] At the time of the trial court's award of attorneys' fees and costs (November 28, 2023), the present version of Appendix B was more than nine years old. That version of Appendix B is now just over ten years old and has not yet been adjusted or updated since 2014. Throughout this brief, Appellants will make reference to the age of Appendix B at the time of the award (over nine years old) and also its present age (10 years old).

## The Underlying Case

On August 24, 2020, Appellants filed suit against their former employers, Zen Nails Studio LLC, and its husband-and-wife owners, Phonz Nguyen and Lihn Nguyen (collectively "Appellees"). JA022-023. Appellants worked for Appellees as "cleaners" at the nail salon. JA023. They alleged that Appellees violated the FLSA and the MWHL, by not paying them an overtime premium for their overtime hours and failing to pay them minimum wages for certain work hours. JA026-027.

Appellees contested nearly every issue in the case, including liability, the hours Appellants claimed to have worked, and the amounts they were paid, forcing this case to trial. JA169-173. Discovery was contentious, and the parties litigated multiple discovery disputes, including disputes regarding electronically stored information ("ESI"). JA169-173. The case culminated in a five-day bench trial lasting from January 23, 2023, to January 27, 2023. JA139. On February 24, 2023, the trial court issued a Memorandum Opinion finding that Appellees violated the FLSA and MWHL and awarding Appellants $66,991.64 in unpaid wages and liquidated damages. JA150.

On March 31, 2023, Appellants filed a motion for attorneys' fees and costs. JA154-187. In that motion, Appellants sought attorneys' fees at the following hourly

rates, which were, at the time of the motion, the normal and customary rates charged

by Appellants' counsel to fee-paying, employment-law clients:

| Position | Name | Hourly Rate |
|---|---|---|
| Partner | Omar Vincent Melehy | $625.00 |
| Partner | Suvita Melehy | $575.00 |
| Associate | Andrew Balashov | $350.00 |
| Paralegals and Law Clerks | | $180.00 |

JA157.

Appellants argued that these rates were prevailing market rates and provided

evidence to support their contentions. JA242-281. Appellees argued Appellants were

only entitled to Appendix B rates, JA413-414, which had last been updated nine

years earlier (in July 2014). Those rates are as follows:

| | |
|---|---|
| Lawyers admitted to the bar for less than five (5) years | $150-$225 |
| Lawyers admitted to the bar for five (5) to eight (8) years | $165-$300 |
| Lawyers admitted to the bar for nine (9) to fourteen (14) years | $225-$350 |
| Lawyers admitted to the bar for fifteen (15) to nineteen (19) years | $275-$425 |
| Lawyers admitted to the bar for twenty (20) years or more | $300-$475 |
| Paralegals and law clerks | $95-$150 |

U.S. Dist. Ct., D. Md., Local Rules, Appendix B (D. Md. Jul.

2023), https://www.mdd.uscourts.gov/local-rules.

Since at least 1998, judges on the Maryland District Court have principally

based awards under fee-shifting statutes[2] on the hourly-rate ranges for attorneys

---

[2] Presently, Appendix B Rates only apply to "cases in which a prevailing party would be entitled, by applicable law or contract, to reasonable attorneys' fees based on a set of criteria including hours and rates." Loc. R. App'x B, at 1.b.

based on their specific years of experience, which are set forth in Appendix B of the Local Rules. *Ford v. Rigidply Rafters*, 999 F. Supp. 647, 651 (D. Md. 1998) (earliest reference to Appendix B rates in District Court decisions). Even though Appendix B itself states that the rates are not binding, the District Court has consistently treated (and continues to treat) the now ten-year-old Appendix B fee matrix as if it reflects current market rates. Loc. R. App'x B at 3. Judges on the District Court have continued to ignore the effects of inflation and the evidence from litigants, including Appellants' counsel, that Appendix B rates are nowhere near current market rates. For example, in *Mancilla v. Chesapeake Outdoor Servs., LLC*, a case decided in 2024, a magistrate judge stated, without citing to any evidence or data, that "market knowledge" of hourly billing rates in Maryland is "embedded" in Appendix B and that, consequently, "generally this Court presumes that a rate is reasonable if it falls within these [Appendix B] ranges." No. 1:22-cv-00032-JMC, 2024 U.S. Dist. LEXIS 96777, at *13 (D. Md. 2024). This is just one example of the District Court's almost routine practice of ignoring actual market rate evidence and defaulting to Appendix B as if it reflected current market rates, which it does not.

The fatal flaw in the now ten-year-old Appendix B is that it contains no mechanism for automatically updating the hourly rates to keep pace with market conditions and the District Court has not updated the matrix with sufficient frequency to ensure that it reflects actual market rates. *See* Loc. R. App'x B. In

contrast, the Maryland Bankruptcy Court automatically adjusts its flat-fee schedule every three years for inflation. Local Rules for the Maryland Bankruptcy Court, Ver. 23.05-24.03 (December 1, 2023), Appendix F. And although Appendix B itself states that "one factor that would support an adjustment to the applicable range is an increase in the cost of legal services. . .", Loc. R. App'x B, at 3, in the 24 years since 2000, the Appendix B fee matrix has only been adjusted 3 times – in 2001, 2008 and 2014. Loc. R. App'x B, at 3.b (2001, 2008, and 2014 versions), https://www.mdd.uscourts.gov/local-rules-prior-versions.

A table listing and comparing the adjustments to Appendix B rates since 2000 is contained below:

| COMPARATIVE ANALYSIS OF APPENDIX B RATES SINCE 2001 | |
|---|---|
| **Effective July 2001** | |
| **Years of Experience Since Admission to Bar** | **Range of Hourly Rates** |
| Less than 5 years | $135-170 |
| 5-8 years | $150-225 |
| 8 years plus | $200-275 |
| Paralegals/Law Clerks | $90 |
| **Effective January 2008** | |
| Less than 5 years | $150-190 |
| 5-8 years | $165-250 |
| 9-14 years | $225-300 |
| 15 years plus | $275-400 |
| Paralegals/Law Clerks | $95-115 |
| **Effective July 2014** | |
| Less than 5 years | $150-225 |
| 5-8 years | $165-300 |
| 9-14 years | $225-350 |
| 15-19 years | $275-400 |
| 20 years plus | $300-475 |
| Paralegals/Law Clerks | $95-150 |

*Id.*

For several reasons, the infrequency and dollar-value of the three adjustments underscore that Appendix B rates are nowhere near current market rates. First, this is the longest period (now 10 years) that the Appendix B rates have not been adjusted upward. The two prior upward adjustments in 2008 and 2014 were seven and six years apart, respectively. *Id*. Second, the lowest rate in each timekeeper bracket has not been adjusted since 2008, a period of 16 years. *Compare* Loc. R. App'x B, at 3.b (2008) and Loc. R. App'x B, at 3.b (2023). Third, in the last 16 years (since 2008), the adjustments to the highest rates in each bracket have only been increased by between $25 and $50. *Id*. Third, practitioners who entered their 20th year of experience in 2008, have only seen their rate increase by $75.00, or less than $5.00 per year. *Id*. And fourth, the adjustments between 2001 and 2014 appear not to have been based on any recognized empirical measure of inflation, but on some other undisclosed arbitrary criteria. *Compare* Loc. R. App'x B, at 3.b (2001) and Loc. R. App'x B, at 3.b (2014).

The Appellants' Evidence of Prevailing Market Rates

Appellants presented evidence that their rates were consistent with prevailing market rates for employment litigators in Maryland and that Appendix B rates were not. JA242-281. Appellants introduced a table showing that if Appendix B rates were adjusted from July 2014 to December 31, 2022, using the data in the Legal Services

Index ("LSI")[3], that the adjusted rates approximate Appellants' counsel's hourly billing rates at the time they filed their motion. JA160-162, JA266-269. That table is as follows:

| Appendix B Category | Current Appendix B Rates | Rate Adjustment Based on LSI |
|---|---|---|
| Lawyers admitted to the bar for less than 5 years | $150-$225 | $192-$287 |
| Lawyers admitted to the bar for 5-8 years | $165-$300 | $211-$383 |
| Lawyers admitted to the bar for 9-14 years | $225-$350 | $287-$447 |
| Lawyers admitted to the bar for 15-19 years | $275-$425 | $351-$543 |
| Lawyers admitted to the bar for 20 or more years | $300-$475 | $383-$606 |
| Paralegals and Law Clerks | $95-$150 | $121-$192 |

JA161.

Appellants' counsel also presented evidence of three recent FLSA cases where the Maryland District Court had awarded them hourly rates at or near Melehy & Associates' ("M&A") normal and customary rates. These cases are: (1) *Quijano, et al., v. Mizpah Building Services, LLC, et al.*, Case No. 19-00038-PJM, ECF No. 13 (Motion), ECF No. 15 (Order granting Motion), (2) *Boyd v. SFS Communications, LLC*, Civil No. 15-cv-3068 PJM, ECF No. 195 (Motion), ECF No. 197 (Order granting Motion), and (3) *Orellana v. ACL Cleaning, LLC*, Civil Action

---

[3] The Legal Services Index ("LSI") refers to the index maintained by the United States Bureau of Labor Statistics. *Eley v. District of Columbia*, 793 F.3d 97, 101-02 (D.C. Cir. 2015). The LSI is a component of the Consumer Price Index ("CPI"), *Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015), which estimates the increase in the cost of legal services nationwide, *D.L. v. D.C.*, 924 F. 3d 585, 589-90 (D.C. Cir. 2019).

No. DKC 19-2318, 2022 U.S. Dist. LEXIS 151039, at *4 (D. Md. 2022). JA183-184. Notably, in *Orellana v. ACL Cleaning, LLC*, the District Court awarded M&A its then customary billing rates (less a slight downward adjustment based on when the work was performed) because plaintiff "satisfied her burden to demonstrate that the rates are consistent with prevailing market rates, *not least because the guideline rates for these positions have not been updated in eight years*" and because " Mr. and Ms. Melehy are highly experienced and credentialed attorneys." Civil Action No. DKC 19-2318, 2022 U.S. Dist. LEXIS 151039, at *5-6 (D. Md. 2022) (emphasis supplied).

Moreover, Appellants proved that M&A charged its normal and customary rates to at least 10 fee-paying clients in employment cases in the 2 years preceding the filing of Appellants' motion. JA677. And in sworn declarations, two attorneys from mid-size employment litigation firms (Joseph Espo and Michal Shinar) corroborated that M&A's rates are on par with prevailing market rates, based on their skill and experience. JA258-260 (declaration of Joseph Espo), JA277-281 (declaration of Michal Shinar). Moreover, since 2015, Mr. Espo's hourly billing rate had risen by approximately 25 percent and in this time his firm had increased the billing rate for attorneys of Mr. Melehy's experience from $575.00 to $625.00 – the very rate sought by Mr. Melehy in this case. JA260 ¶ 7.

Appellants' counsel also presented the trial court with a billing-rate survey conducted by Wolters Kluwer, which showed that in 2021, the median billing rate at law firms in Baltimore, Maryland was $645.00 per hour for Partners and $513.00 per hour for Associates. JA261-265. These rates exceed M&A's rates for partners ($625.00 for Mr. Melehy and $575.00 for Ms. Melehy), and associates ($350.00 for Mr. Balashov). JA261-265. In addition, Appellants' counsel presented evidence that in 2020, Littler, Mendelson, P.C., represented to the Maryland Bankruptcy Court that it charged the following rates for employment lawyers in Maryland: $850.00 for a partner with Mr. Melehy's experience and $470.00 per hour for an associate who then had only one more year of experience than Mr. Balashov. JA158-159; *See* Final Application, *In re: Creative Hairdressers, Inc*., *et al*., Case No. 20-14583, ECF No. 778 at 6.

In addition to listing other decisions where M&A was awarded, over its objection, Appendix B rates, Appellees principally relied on a declaration from Maryland employment lawyer Howard Hoffman, JA427-447, which the trial court ignored, most likely because he failed to refute Appellants' contention that the then nine-year-old Appendix B rates were well below market rates. Significantly, Hoffman agreed with Appellants that Appendix B is in need of adjustment for inflation, and he stated that Appendix B is "nine years out of date and deserving of judicial review." JA437-438 ¶ 24. Moreover, Hoffman did not state his own normal

and customary billing rate in employment cases and he offered no opinion on (1) what the prevailing market rate was for Appellants' timekeepers or (2) on whether Appendix B was consistent with then-current market rates. *See* JA427-447.

## The Trial Court's Decision

The trial court agreed that Appellants were entitled to an award at the "prevailing market rates" in the relevant community but it failed to perform a market rate analysis. JA807. It also found that the declaration of Michal Shinar "provides support for the reasonableness of the hourly rates" sought by Appellants. JA809. And it recognized that Appendix B rates were inconsistent with current market rates, noting that "the Court had not recently adjusted these rates for inflation" and that "the rates were lower than the standard billing rates for Plaintiffs' counsel." JA809. But in a crude effort to compensate for the age of the Appendix B fee matrix, the trial court awarded each timekeeper rates at the top end of each bracket. JA809. In addition, the court gave three arbitrary reasons for awarding the nine-year old Appendix B rates: (1) the work was "not particularly novel or complex", (2) "it did not require skill beyond a typical case", and (3) since Appellants' counsel was on notice of the Appendix B rates when they took the case, they should have expected to receive those rates. JA809.

## SUMMARY OF THE ARGUMENT

In Maryland, District Court judges in the northern and southern divisions almost invariably calculate current fee awards using the now ten-year-old hourly rates set forth in Appendix B of the Local Rules. *See* Loc. R. App'x B. Despite the age of Appendix B's fee matrix (nine years at the time of the award), the trial court erroneously determined that Appellants' counsel should be compensated at those outdated rates, instead of the substantially higher rates that Appellants' counsel proved were consistent with current market rates. JA809. By awarding the nine-year-old Appendix B rates rather than current market rates, it made a clear error of law or abused its discretion. The Supreme Court mandates that district courts base fee awards on market rates in the local community. A Local Rule (Appendix B) cannot override binding precedent from the Supreme Court. As a result, this Court should remand this case to the trial court with instructions that it disregard the now-outdated Appendix B and use market rates, as established by appropriate evidence, to determine the fee to be awarded.

## ARGUMENT

I.   THE TRIAL COURT COMMITTED A CLEAR ERROR OF LAW WHEN IT BASED ITS FEE AWARD ON AN ARBITRARY NINE-YEAR-OLD MATRIX, INSTEAD OF PREVAILING MARKET RATES, AS THE SUPREME COURT REQUIRES.

In Maryland, District Court judges in the northern and southern divisions almost invariably calculate current fee awards using the now ten-year-old hourly

rates set forth in Appendix B of the Local Rules. *See* Loc. R. App'x B at 3. Despite the age of Appendix B, the trial court did the same, holding that Appellants' counsel should be compensated at those outdated rates, instead of the higher rates that Appellants' evidence indicated were market rates. JA809. The trial court used Appendix B rates because it was authorized to do so by the court's Local Rules. JA809. It did not find that Appendix B reflected current market rates for attorneys in the local community; there was no evidence that Appendix B reflected such rates; and indeed, the evidence indicated that Appendix B greatly understates market rates. JA809. The trial court made a clear error of law because the Supreme Court mandates that district courts base fee awards on market rates in the local community. A Local Rule cannot override binding precedent from the Supreme Court and this Court, which requires an award at current market rates. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (district court committed reversible error by relying on a court-created fee schedule in the local rules, instead of performing a market rate analysis).

This Court reviews errors of law de novo. *Cisson v. C.R. Bard, Inc. (In re C.R. Bard, Inc.)*, 810 F.3d 913, 929 (4th Cir. 2016). The Supreme Court mandates that awards under fee-shifting statutes be at the prevailing market rate in the community where the action is pending: "As nearly as possible, market standards should prevail, for that is the best way of ensuring that competent counsel will be available to all

persons with bona fide civil rights claims." *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983). *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community" (internal citations omitted)). And this Court has issued similar rulings. *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

To determine what the market rates were and whether they were consistent with Appendix B, the trial court was required to undertake an inquiry and weigh the Parties' evidence on this point. *Rum Creek Coal Sales*, 31 F.3d at 175. The inquiry is "best guided by what attorneys earn from paying clients for similar services in similar circumstances." *Id*. To that end, the trial court can consider evidence such as: (1) an attorney's actual billing rates, *id*.; (2) the billing rates of other attorneys in the relevant community for the same type of work, *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009); (3) testimony regarding the applicant's skill and experience in the legal community at large, *id*.; (4) the applicant's prior fee awards in similar cases, *E. Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561, 572 (4th Cir. 2013); and (5) fee matrices, *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009).

Given its age, the trial court committed reversible error when it based its fee award on Appendix B rates, despite substantial evidence that the then nine-year-old

fee matrix did not reflect current market rates. In *Newport News*, this Court held that an administrative agency committed reversible error by basing a market rate determination on a 10-year-old decision, because "an hourly rate appropriate ten years ago, arbitrarily adjusted with no regard to the facts of the case or the lodestar factors, is not necessarily appropriate today." *Id*. at 228. Indeed, in *Newport News*, the Court observed that the adjudicating authority "must 'make . . . determinations [of the relevant community and the reasonable hourly rate] with sufficient frequency that it can be confident – and we can be confident in reviewing its decisions – that its fee awards are based on current rather than merely historical market conditions.'" *Id*. (quoting *Christensen v. Stevedoring Servs. of Am*., 557 F.3d 1049, 1054-55 (9th Cir. 2009)).[4]

A trial court cannot simply rely on a matrix without evidence showing that it actually reflects current market rates, evidence which was absent in this case. In *Lee v. Agape Health Mgmt., Inc*., Nos. 23-1582, 23-1586, 23-1636 and 23-1647, 2024 U.S. App. LEXIS 18670 (4th Cir. July 29, 2024), the plaintiffs offered no specific evidence that the hourly rates sought coincided with the then prevailing market rates

---

[4] In *Bell v. Clackamas Cty.*, a fee-shifting case, the Ninth Circuit, relying on *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989), held that the trial court committed reversible error when it awarded an hourly rate which was found reasonable by the trial court in 1998, but the work was performed two to three years later (in 2000 and 2001). 341 F.3d 858, 868-69 (9th Cir. 2003).

of attorneys in the Eastern District of Virginia of similar skill for similar work. *Id*. at *10. Yet the trial court awarded the plaintiffs' counsel the rates sought, without performing a market rate analysis. *Id*. at *10-11. This Court found that the trial court's failure to perform a proper market rate analysis was reversible error and it remanded the case, *inter alia*, for a determination of whether the plaintiffs' rates were consistent with prevailing market rates in that locality. *Id*. at *11-12. *See also Grissom v. the Mills Corp*., 549 F.3d 313, 323 (4th Cir. 2008) (finding reversible error where the hourly rates awarded by the trial court were inconsistent with the evidence of market rates); *D.L. v. District of Columbia*, 924 F.3d 585, 589, 591-93 (D.C. Cir. 2019) (holding that the trial court committed reversible error by awarding rates set forth in the United States Attorney's Office Laffey Matrix because they were not an accurate reflection of true market rates).

Notably, in this case, the trial court actually found "support for the reasonableness of the hourly rates" sought by Appellant; it accepted Appellants' counsel's representations about its normal and customary billing rates; and it acknowledged that Appendix B was out of date because it had not been adjusted for inflation. JA809. Nonetheless, it gave lip service to those findings. It cited no evidence that contradicted Appellants' contention that Appendix B rates were well below market rates. *See* JA805-816. And, despite the Supreme Court's mandate that it must award prevailing market rates, the trial court made no findings of what

prevailing market rates were or whether Appendix B rates or the rates sought by Appellants were consistent with current market rates. *See* JA805-816. Moreover, it failed to determine or explain how Appendix B could possibly be consistent with current market rates, when it had not been updated in nine years, inflation in the last decade has been significant and Appellants presented unrefuted evidence to the contrary, including evidence that Appendix B, if adjusted for inflation, was at least 28% below current market rates. *See* JA805-816, JA266-269.

Instead, the trial court took a dog-wagging-the-tail approach. Without making any finding on the issue, the trial court erroneously treated the nine-year-old Appendix B rates as the prevailing market rates solely by virtue of their perennial publication in the District Court's Local Rules. JA809. It declined to perform its own market rate analysis and it rejected Appellants' substantial and largely undisputed market rate evidence. JA809. In other words, the trial court defaulted to the significantly outdated Appendix B, not because it represented current market rates (clearly it did not), but because it was created by the District Court, published in the District Court's Local Rules and, despite being outdated, it has been and continues to be utilized across-the-board by Maryland District Court judges in making fee awards in the vast majority of statutory fee-shifting cases. JA809. This is a clear error of law.

What the trial court failed to recognize is that published rates or matrices –
Appendix B or others – begin to age immediately after publication and will soon no
longer realistically reflect the prevailing market rate in the community where the
action is pending. This is particularly true for matrices like Appendix B that are not
automatically updated – or not updated at all – to account for the obvious fact that
over time, rates rise, inflation occurs, and the dollar devalues. *Daly v. Hill*, 790 F.2d
1071, 1081 (4th Cir. 1986). Simply because Appendix B is court-created, that does
not relieve the trial court (or the District Court generally) of its Supreme-Court-
mandated obligation to perform a market rate analysis. Given the inflation that
transpired in the last decade, reliance on the nine-year-old Appendix B is reversible
error. Court-created or not, Appendix B cannot trump actual current market rates.
Even assuming that Appendix B accurately reflected market rates ten years ago –
something that is by no means clear – it artificially sets attorneys' fee reimbursement
rates at 2014 levels, in disregard of the market rate evidence to the contrary and the
Supreme Court's mandate.

This Court should remand this case to the trial court with instructions that it
disregard the now-outdated Appendix B and use market rates, as established by
appropriate evidence, to determine the fee to be awarded.

II.    ALTERNATIVELY, THE COURT ABUSED ITS DISCRETION WHEN IT
       BASED ITS FEE AWARD ON AN ARBITRARY NINE-YEAR-OLD
       MATRIX, AND LARGELY IGNORED APPELLANTS' EVIDENCE
       THAT THE MATRIX WAS WELL BELOW MARKET RATES.

When assessing a challenge to a fee award by the trial court, this Court reviews the application of law to facts for abuse of discretion. *Rum Creek Coal Sales*, 31 F.3d at 174. The trial court "abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous legal or factual premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007) (citing *United States v. Williams*, 461 F.3d 441, 445 (4th Cir. 2006); *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005)); *Newport News*, 591 F.3d at 226-27.

Moreover, a court must consider the effect of delay in payment on the calculation of a reasonable fee. *Missouri v. Jenkins*, 491 U.S. at 283-84; *Daly v. Hill*, 790 F.2d at 1081; *Ohio River Valley Envtl. Coalition, Inc., v. Green Valley Coal Co.*, 511 F. 3d 407, 419 (4th Cir. 2007). The trial court had two options. It could have determined current market rates based on the evidence before it or it could have determined a reasonable approximation of current rates by updating historical rates to present value using a reasonable rate multiplier to adjust for inflation. *Green Valley Coal Co.*, 511 F.3d at 419. And, although the trial court has discretion to choose the proper method to compensate for delay, it is without discretion to decline to employ one of these two methods *id.*, which is exactly what the trial court did in this case.

19

Appellants presented substantial and largely unrefuted evidence that Appendix B rates were nowhere near current market rates. JA242-281. Appellants' counsel presented to the trial court (and the trial court accepted) that their normal and customary rates charged to fee-paying clients were well above Appendix B rates: Omar Melehy (34 year of experience, $625 per hour); Suvita Melehy (27 years of experience, $575 per hour), Andrew Balashov (7 years of experience, $350 per hour) and paralegals and law clerks ($180 per hour). JA157, JA249 ¶ 28. They also presented the following evidence: declarations from two attorneys stating that the rates charged by Appellants' counsel were at or below prevailing market rates in Maryland for, *inter alia*, wage and hour practitioners, JA258-260, JA277-281; three prior fee awards in Maryland wage and hour cases that were at or near their normal and customary rates, JA183-184[5]; a 2021 billing survey of Baltimore firms showing average hourly billing rates of $645.00 for Partners and $513.00 for Associates, JA261-265; and a 2021 motion for attorneys' fees in a Maryland bankruptcy case from Littler Mendelson P.C., showing that it charged $850 per hour for an employment attorney in Maryland with 35 years of experience and $470 per hour

---

[5] While in all three cases the plaintiff's motion was unopposed, the trial court was still bound to consider them in the market rate analysis. *Johnson v. GDF, Inc.*, 668 F.3d 927, 934 (7th Cir. 2012) ("It was therefore an abuse of discretion for the district court to set Rossiello's rate by considering only cases where his fees were challenged.").

for one with seven years of experience. JA158-159; *See also* Final Application, *In re: Creative Hairdressers, Inc., et al.*, Case No. 20-14583, ECF No. 778 at 6.

Appellants also presented the trial court with evidence that, if adjusted for inflation in the cost of legal services, Appendix B rates would be 28% higher than they were 10 years ago, when Appendix B was last updated. JA266-269. In an Equal Access to Justice Act case, this Court held that applying the Bureau of Labor Statistics' LSI to historical rates yields "prevailing market rates." *Sullivan v. Sullivan*, 958 F.2d 574, 577-78 (4th Cir. 1992). If the 2014 Appendix B rates awarded to Appellants' counsel are adjusted using the LSI, they increase in the following way:

| Appendix B Category | Current Appendix B Rates | Rate Adjustment Based on LSI |
|---|---|---|
| Lawyers admitted to the bar for less than 5 years | $150-$225 | $192-$287 |
| Lawyers admitted to the bar for 5-8 years | $165-$300 | $211-$383 |
| Lawyers admitted to the bar for 9-14 years | $225-$350 | $287-$447 |
| Lawyers admitted to the bar for 15-19 years | $275-$425 | $351-$543 |
| Lawyers admitted to the bar for 20 or more years | $300-$475 | $383-$606 |
| Paralegals and Law Clerks | $95-$150 | $121-$192 |

JA266-269.

After the LSI adjustment, the hourly rates awarded by the trial court increase by about 28%. For Mr. and Mrs. Melehy, their $475 rate award increases by $131 to $606 per hour, the rate awarded to Andrew Balashov ($300) increases by $83 to $383 per hour, and the rate awarded for paralegals and law clerks ($150) increases

by $42 to $192 per hour. JA266-269. This was just one more piece of evidence that demonstrates that Appendix B rates were well below current market rates and not on par with Appellants' counsel's current prevailing market rates. JA266-269.

And Appellees' principal evidence on the rate issue – a declaration from Maryland employment attorney Howard Hoffman – failed to refute Appellants' contention that the nine-year-old Appendix B rates were well below market rates. JA427-447. First and foremost, Hoffman agrees with Appellants that Appendix B needs to be adjusted for inflation. JA437-438 ¶ 24. In a sworn declaration, he states that Appendix B is "nine years out of date and deserving of judicial review." JA437-438 ¶ 24. Second, Hoffman's declaration offers no opinion on what the prevailing market rate is for Appellants' timekeepers, nor does it state that Appendix B is consistent with current market rates. *See* JA427-447. And third, it does not even identify his firm's normal and customary billing rate in employment cases. *See* JA427-447.

The trial court agreed that Appellants were entitled to an award at the "prevailing market rates" and it found that the declaration of Michal Shinar "provides support for the reasonableness of the hourly rates" sought by Appellant. JA807, JA809. It also recognized that Appendix B rates were not consistent with current market rates, noting that "the Court had not recently adjusted these rates for inflation" and that "the rates were lower than the standard billing rates for Plaintiffs'

counsel." JA809. But the trial court failed to make a finding on whether Appendix B rates were consistent with market rates. *See* JA805-816.

The trial court's erroneous solution for making a market-rate adjustment to Appendix B, was to award rates at the top of each Appendix B bracket. *See* JA805-816. There are three problems with this approach. First, using the high end of a nine-year-old matrix is completely arbitrary and no substitute for performing a current market rate analysis. Second, even the top-of-the-bracket rates are nine years old and substantially below market rates. And third, Appellants' counsel was potentially eligible for top-of-the-bracket rates anyway. Mr. and Mrs. Melehy have 34 and 27 years of experience respectively and would potentially have qualified for the top rate in the "20 years or more" bracket. And Andrew Balashov, who had seven years of experience, would potentially have been eligible for the top rate in the "5-8 years" bracket or close to it. *Carranza v. Ramirez*, No. PWG 20-cv-2687, 2022 U.S. Dist. LEXIS 161253, at *16 (D. Md. 2022) (awarding Mr. and Mrs. Melehy, and Mr. Balashov hourly rates at the top of their respective Appendix B range).

Moreover, the trial court's application of three factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), was no substitute for a market rate analysis. Those factors were as follows: (1) the work was "not particularly novel or complex", (2) it "did not require skill beyond a typical case", and (3) Appellants' counsel was on notice of the Appendix B rates when they took

the case. JA809. Because the trial court's analysis of those factors was arbitrary and conclusory and because it bore no direct relationship to an actual market rate analysis, the trial court abused its discretion when used them to justify its reliance on a nine-year-old court-created matrix. *See e.g. Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec Gmbh*, 505 F. App'x 281, 284 (4th Cir. 2013) (conclusory application of *Johnson* factors warranted remand on the issue of attorneys' fees); *Doe v. Kidd*, 656 F.App'x 643, 655 n.2 (4th Cir. 2016) (finding reversible error where the district court provided insufficient justification for reducing hourly rates sought); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 179 (3d Cir. 2001) (reversing a fee decision where the trial court made insufficient findings in the record to support its conclusion regarding a reasonable fee).

Finally, the trial court's adoption of the then nine-year-old Appendix B rates simply because they are part of the District Court's Local Rules was also reversible error. This Court has emphasized that prior awards "are not controlling authority establishing a prevailing market rate for later cases[] . . . [because, were] that the case, the hourly rates of attorneys could be predetermined by erroneous prior awards, or lose the capacity to respond to changing market conditions." *E. Associated Coal Corp.*, 724 F.3d at 572.; *see also McClain v. Lufkin Indus.*, 649 F.3d 374, 383 (5th Cir. 2011) ("[t]he hourly fee awarded must be supported by the record; the trial court may not simply rely on its own experience in the relevant legal market to set a

reasonable hourly billing rate" (internal citations omitted)); *Farbotko v. Clinton Cty.*, 433 F.3d 204, 210 (2d Cir. 2005) (reversing fee decision in-part where court relied exclusively on an hourly rate by reference to caselaw, without fully evaluating contrary evidence that those rates were no longer reasonable).

In short, the trial court committed reversible error when it failed to perform a market rate analysis and summarily adopted the then nine-year-old Appendix B rates as if they were equivalent to current market rates. This Court should remand this case to the trial court with instructions that it disregard the now-outdated Appendix B rates and use market rates, as established by appropriate evidence, to determine the fee to be awarded.

## CONCLUSION

For the foregoing reasons, Appellants ask that the Court reverse the decision of the trial court awarding Appellants' counsel Appendix B rates and remand the case to the trial court with instructions that it disregard Appendix B and award Appellants fees at prevailing market rates.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), Appellants hereby request oral argument in this matter. Oral argument is appropriate because the issues in this case are not only significant to the parties, but also to employees and employers in this Circuit.

Respectfully Submitted,

/s/Matthew B. Kaplan
Matthew B. Kaplan
VSB No. 51027
The Kaplan Law Firm
1100 N. Glebe Rd., Suite 1010
Arlington, VA 22201
Tel: (703) 665-9529
mbkaplan@thekaplanlawfirm.com

/s/Omar Vincent Melehy
Omar Vincent Melehy
Bar No.: 5712

/s/Andrew Balashov
Andrew Balashov
Bar No.: 19715

Melehy & Associates, LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel.: 301-587-6364
Facsimile: 301-587-6308
Email: ovmelehy@melehylaw.com

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Fed. R. App. P. 27(d)(1)(E) and the word limit of Fed. R. App. P. 27(d)(2)(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,061 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-Point Times New Roman Font.

/s/Andrew Balashov
Andrew Balashov
Attorney for Appellants
Dated: August 7, 2024

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## CERTIFICATE OF SERVICE

The undersigned being duly sworn according to law and being over the age of 18, upon oath depose and say that:

On August 7, 2024, Counsel for Appellants electronically filed the foregoing Corrected Brief of Plaintiff-Appellants and the Joint Appendix with the Clerk of the Court using the CM/ECF system which will send notice to the following CM/ECF users:

Neil Lebowitz, Esquire
*Counsel for the Appellees*


/s/Andrew Balashov
Andrew Balashov