IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

FLOR I. ARRIAZA DE PAREDES;
FRANCISCO HERNAN TEJADA LOPEZ

Plaintiffs-Appellants

v.

ZEN NAILS STUDIO, LLC; PHONZ NGUYEN;
LINH NGUYEN

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND

RESPONSE BRIEF OF APPELLEES

Neil R. Lebowitz
Lebowitz Law Firm
5850 Waterloo Road, Suite 140
Columbia, Maryland 21045
neil@lebowitzlegal.com
410-730-9010
*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2309__          Caption: ___De Paredes, et al. v. Zen Nails Studio, LLC, et al.___

Pursuant to FRAP 26.1 and Local Rule 26.1,

___Zen Nails Studio, LLC___
(name of party/amicus)

_____

 who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☑YES ☐NO
    If yes, identify entity and nature of interest:

    Appellees secured a loan from Mulligan Funding, LLC (hereinafter "Mulligan") in relation to Appellees' payment of the underlying damages judgment.  It does not appear that Mulligan is publicly held and it seems unlikely that it could have a "direct financial interest in the outcome of the litigation," especially given that only the fees/costs judgment is being appealed, but Appellees are nonetheless identifying Mulligan herein out of an abundance of caution.

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  _/s/  Neil R. Lebowitz_          Date:  ___01/10/2024___

Counsel for:  ___Appellees___

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>23-2309</u>          Caption:          <u>De Paredes, et al. v. Zen Nails Studio, LLC, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Linh Nguyen</u>
(name of party/amicus)

who is <u>an Appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?            ☑YES ☐NO
If yes, identify entity and nature of interest:

Appellees secured a loan from Mulligan Funding, LLC (hereinafter "Mulligan") in relation to Appellees' payment of the underlying damages judgment.  It does not appear that Mulligan is publicly held and it seems unlikely that it could have a "direct financial interest in the outcome of the litigation," especially given that only the fees/costs judgment is being appealed, but Appellees are nonetheless identifying Mulligan herein out of an abundance of caution.

5.    Is party a trade association? (amici curiae do not complete this question)        ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?             ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____ /s/  Neil R. Lebowitz _____        Date: _____ 01/10/2024 _____

Counsel for: _____ Appellees _____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2309__      Caption: _____De Paredes, et al. v. Zen Nails Studio, LLC, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____Phonz Nguyen_____
(name of party/amicus)

_____

 who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                      ☑YES ☐NO
      If yes, identify entity and nature of interest:

      Appellees secured a loan from Mulligan Funding, LLC (hereinafter "Mulligan") in relation to
      Appellees' payment of the underlying damages judgment.  It does not appear that Mulligan is
      publicly held and it seems unlikely that it could have a "direct financial interest in the outcome
      of the litigation," especially given that only the fees/costs judgment is being appealed, but
      Appellees are nonetheless identifying Mulligan herein out of an abundance of caution.

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                        ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?       ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature:   ___/s/  Neil R. Lebowitz_____        Date:   ___01/10/2024___

Counsel for:  ___Appellees_____

**Print to PDF for Filing**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................i

TABLE OF AUTHORITIES ................................................ ii

I.  STATEMENT OF JURISDICTION ..................................1

II.  STATEMENT OF ISSUES..........................................1

III.  STATEMENT OF THE CASE .....................................1

IV.  SUMMARY OF ARGUMENT .....................................8

V.  ARGUMENT ............................................................8

   A.  Standard of Review and Wide Discretion Afforded
      District Courts in Deciding Fee Awards.........................8

   B.  Reasonable Fees and the *Johnson* Factors .....................12

   C.  Appendix B of the Local Rules ...................................15

   D.  Hoffman's Sworn Declaration ....................................18

   E.  It is Commonplace for Counsel in Fee-Shifting Cases
      to Seek Hourly Rates <u>within</u> Appendix B Ranges...........24

   F.  District Court Did Not Err .........................................34

VI.  CONCLUSION..........................................................47

# TABLE OF AUTHORITIES

*Aguilar v. Hickman*, Civ. A. No. TDC-22-2184, 2023 WL 7299960
(D. Md. Nov. 6, 2023) (report and recommendation), *adopted by*
2023 WL 11225937 (D. Md. Nov. 30, 2023) ........................................................30

*Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978) ........................................13

*Benjamin v. Sparks*, 986 F.3d 332 (4th Cir. 2021) ................................................11

*Berman v. Mid-Atlantic Eateries, Inc.*, Civ. A. No. ABA-23-2840,
2024 WL 3597191 (D. Md. July 31, 2024) .............................................................31

*Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015)..................................................10

*Best Medical Intern., Inc. v. Eckert & Ziegler Nuclitec GmbH*,
505 Fed. Appx. 281 (4th Cir. 2013)................................................................36 n.17

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................6

*Bocangel v. Warm Heart Family Assistance Living, Inc.*,
561 F. Supp.3d 534 (D. Md. 2021) ................................................................... 27-28

*Bowen v. Athelas Inst., Inc.*, Civ. A. No. DLB-19-2628,
2020 WL 4471517 (D. Md. Aug. 4, 2020) .............................................................26

*Burnley v. Short*, 730 F.2d 136 (4th Cir. 1984) ....................................................10

*Butler v. PP&G, Inc.*, Civ. A. No. 20-3084-JRR,
2023 WL 6517593 (D. Md. Oct. 5, 2023) ......................................................... 29-30

*Carmona v. EBRR Logistics, LLC*, Civ. A. No. RDB-19-3077, 2024
WL 2113625 (D. Md. May 10, 2024), *amended in part by* 2024
WL 3554924 (D. Md. July 25, 2024) ........................................................................32

*Carranza v. Ramirez*, Civ. A. No. PWG-20-2687,
2022 WL 4080310 (D. Md. Sept. 6, 2022) ..............................................................45

*Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995) ..............................10

*Caruccio v. Marco Technologies, LLC*, Civ. A. No. 1:22-cv-01477-JRR, 2023 WL 11877446 (D. Md. Sept. 14, 2023) ..........................................29

*Castro v. Early Learning Language Academies, LLC*, Civ. A. No. CBD-18-2421, 2021 WL 915106 (D. Md. Mar. 9, 2021) ...................................26

*Chaten v. Marketsmart LLC*, Civ. A. No. PX-19-1165, 2020 WL 4726631 (D. Md. Aug. 14, 2020) (report and recommendation), *adopted by* 2020 WL 13569350 (D. Md. Sept. 17, 2020) .................. 33-34, 34 n.16

*Childress v. Fox Assocs., LLC*, 932 F.3d 1165 (8th Cir. 2019) ...............................9

*Combustion Science & Engineering, Inc. v. United Parcel Svc., Inc.*, Civ. A. No. RDB-21-3312, 2022 WL 4095299 (D. Md. Sept. 7, 2022) ......................29

*Dewitt v. Ritz*, Civ. A. No. DKC 18-3202, 2021 WL 3187981 (D. Md. July 28, 2021) ...................................................27

*Doe v. Kidd*, 656 Fed. Appx. 643 (4th Cir. 2016) .........................................36 n.17

*Drummond v. David's Loft Clinical Programs*, Civ. A. No. DLB-20-2881, 2021 WL 1610108 (D. Md. Apr. 26, 2021) ...........................................................27

*Duprey v. Scotts Co. LLC*, 30 F. Supp.3d 404 (D. Md. 2014) .................................6

*Eastern Associated Coal Corp. v. Director, Office of Workers' Comp. Programs*, 724 F.3d 561 (4th Cir. 2013) ......................................24

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315 (4th Cir. 2008) .................................................................11

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) ................................................ 9-10

*Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647 (D. Md. 1998) ...........................15

*Fox v. Vice*, 563 U.S. 826 (2011) .............................................................................9

*G&G Closed Circuit Events, LLC v. Blow Fish House, Inc.*, Civ. A. No. 8:23-cv-0652-PX, 2023 WL 7016350 (D. Md. Oct. 25, 2023) ...............................30

*Gonzalez v. Mogotillo Rest., LLC*, Civ. A. No. TDC-21-2063, 2022
WL 908898 (D. Md. Mar. 29, 2022) (report and recommendation),
*adopted by* 2022 WL 2400758 (D. Md. Apr. 19, 2022) .........................................28

*Gue v. Shree Pashuapati Corp.*, Civ. A. No. DKC-21-44,
2021 WL 2414866 (D. Md. June 15, 2021) ............................................................27

*Guillen v. Armour Home Improvement, Inc.*, Civ. A. No. DLB-19-2317,
2024 WL 3877603 (D. Md. Aug. 20, 2024) .................................................. 3-4, 6, 7

*Guillen v. Armour Home Improvement, Inc.*, Civ. A. No. DLB-
19-2317, 2024 WL 1346838 (D. Md. Mar. 29, 2024) ........ 2, 4, 5, 5 n.2, 33, 43 n.19

*Harwood v. American Airlines, Inc.*, 37 F.4th 954 (4th Cir. 2022)............11, 14, 38

*H.C. v. New York City Dept. of Ed.*, 71 F.4th 120 (2d Cir. 2023) ..........................38

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)............................................8, 10, 12, 37

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Marketing,
Sales Practices and Prods. Liability Litig.*, 27 F.4th 291 (4th Cir. 2022).........10, 14

*Jackson v. Estelle's Place, LLC*, 391 Fed. Appx. 239 (4th Cir. 2010)....................14

*Jahn v. Tiffin Holdings, Inc.*, Civ. A. No. SAG-18-1782,
2020 WL 4436375 (D. Md. Aug. 3, 2020) ............................................................26

*J.D. ex rel. Davis v. Kanawha County Bd. of Educ.*,
571 F.3d 381 (4th Cir. 2009) ........................................................................... 36-37

*Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974) ....... 12-13

*Johnson v. Helion Technologies, Inc.*, Civ. A. No. DKC 18-3276,
2023 WL 2478860 (D. Md. Mar. 13, 2023) ..........................................................29

*Jones v. Time Org. LLC*, Civ. A. No. DLB-20-1935,
2021 WL 1117275 (D. Md. Mar. 24, 2021) ..........................................................27

*Juarez v. A.M.C. Constr., LLC*, Civ. A. No. 8:20CV-1508-PWG,
2022 WL 3586511 (D. Md. Aug. 22, 2022) ..................................................... 28-29

*Kirk T. v. Saul*, 489 F. Supp.3d 411 (D. Md. 2020)..................................................26

*Lee v. Agape Health Mgmt., Inc.*, Nos. 23-1582, 23-1586, 23-1636,
23-1647, 2024 WL 3565309 (4th Cir. July 29, 2024) ....................................36 n.17

*Lilly v. City of N.Y.*, 934 F.3d 222 (2d Cir. 2019)......................................................38

*Lyle v. Food Lion, Inc*, 954 F.2d 984 (4th Cir. 1992)................................................12

*Mancilla v. Chesapeake Outdoor Svcs., LLC*, Civ. A. No. 1:22-cv-
00032-JMC, 2024 WL 2803947 (D. Md. May 31, 2024).........................31, 31 n.14

*Marquez v. India Bazaar, Inc.*, Civ. A. No. 8:21-cv-01775-AAQ,
2023 WL 4086141 (D. Md. June 20, 2023)..............................................................29

*McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013) ................................5, 13, 23, 24, 43

*Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2014)......................................................9

*Munoz v. Telligent Masonry LLC*, Civ. A. No. 21-2789,
2023 WL 6389129 (D.D.C. Oct. 2, 2023) ................................................................4

*Newport News Shipbuilding & Dry Dock Co. v. Brown*,
376 F.3d 245 (4th Cir. 2004) ...................................................................................25

*Newport News Shipbuilding & Dry Dock Co. v. Holiday*,
591 F.3d 219 (4th Cir. 2009) ...................................................................................34

*Orellana v. Don Pollo of Bethesda, Inc.*, Civ. A. No. PWG-20-2795,
2021 WL 2187014 (D. Md. May 28, 2021)...............................................................27

*Perez v. Jaddou*, 31 F.4th 267 (4th Cir. 2022)..........................................................8

*Ramirez v. 316 Charles, LLC*, Civ. A. No. SAG-19-03252,
2021 WL 662185 (D. Md. Feb. 19, 2021) ................................................................26

*Ramnarine v. Rainbow Child Dev. Ctr. Inc.*, Civ. A. No. PWG-17-2261,
2022 WL 16709764 (D. Md. Nov. 4, 2022) (report and recommendation),
*adopted by* 2023 WL 1416031 (D. Md. Jan 31, 2023) ....................................42, 45

*Santos v. E&R Svcs., Inc.*, Civ. A. Nos. ABA-20-2737, ABA-22-3330, 2024 WL 1416564 (D. Md. Apr. 2, 2024) ................................................32

*Schwartz v. Rent–A–Wreck of Am.*, 261 F. Supp.3d 607 (D. Md. 2017)................14

*Smith v. David's Loft Clinical Programs, Inc.*, Civ. A. No. 21-cv-03241-LKG, 2022 WL 16553228 (D. Md. Oct. 31, 2022) .........................29

*Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) ................................. 24-25

*Stinnie v. Holcomb*, 77 F.4th 200 (4th Cir. 2023)....................................................24

*Trimper v. City of Norfolk, Va.*, 58 F.3d 68 (4th Cir. 1995).......................14, 37, 44

*Trustees of Nat'l Electrical Benefit Fund v. Loga Holding, LLC*, Civ. A. No. PWG 21-cv-2917, 2022 WL 3100759 (D. Md. Aug. 4, 2022)........................28

*Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399 (7th Cir. 1999) ......................................9

*U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009) ................................14

*Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934 (11th Cir. 2020)......................9

*Victor Stanley, Inc. v. SCH Enterprises, LLC*, Civ. A. No. RDB-06-2662, 2021 WL 3510588 (D. Md. Aug. 10, 2021) ............................................................27

*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018) ...................16 n.6

*Wade v. CBH Health, LLC*, Civ. A. No. PX-20-3573, 2021 WL 8269082 (D. Md. Oct. 15, 2021) ............................................................28

*Wegner v. Carahsoft Tech. Corp.*, Civ. A. No. PJM 20-00305, 2022 WL 316653 (D. Md. Feb. 1, 2022) ....................................................................28

*Wright v. Brown*, 993 F.2d 1541 (table) (4th Cir. 1993) ........................................11

29 U.S.C. § 216(b) ................................................................................................9, 12

Md. Code Ann., Labor & Employ. § 3-427(d)(1) ....................................................12

Fed. R. Civ. P. 54(d)(2)(D) ................................................................15 n.5

U.S. Dist. Ct., Dist. Md., Loc. R. 109.2.(b) ...........................................33

U.S. Dist. Ct., Dist. Md., Loc. R. at Appx. B ....................................15, 16

# I.  STATEMENT OF JURISDICTION

Appellees concur with Appellants that this Honorable Court has jurisdiction.

# II.  STATEMENT OF ISSUES

The sole issue on appeal before this Court is whether the U.S. District Court erred in determining reasonable hourly rates for the services of Appellants' counsel.[1] Appellants, in their Brief, did not contest any other aspect of the District Court's ruling regarding fees and costs.

# III.  STATEMENT OF THE CASE

In this case, the two Appellants, who worked as cleaning people at Appellees' nail salon, alleged that they had worked overtime without proper compensation for their services under the Fair Labor Standard Act ("FLSA") and Maryland's Wage and Hour Law.  JA806.  Following a bench trial in January 2023, U.S. District Judge Theodore D. Chuang, who had presided over the case since its inception, *see* JA001-021, ruled for Appellants.  JA806.  Before the all-but-mandated doubling for liquidated damages, one Appellant was awarded about $15,000 and the other less than $20,000.  JA149.  All told, including liquidated damages, judgment was entered in Appellants' favor for just under $67,000.  JA806.  This judgment has since been satisfied by Appellees.  JA020.

---

[1]  References herein to "Appellants' counsel" should be construed as referring to the attorneys at Melehy & Associates LLC.

Thereafter, Appellants sought the recovery of attorney's fees and costs. The matter was fully briefed by the parties, *see* JA014-019, and the District Court ruled, on November 28, 2023, that Appellants were entitled to receive "$167,115.49 in attorney's fees and $34,234.37 in costs," for a total of $201,349.86. JA816.

Subsequently, Appellants sought the entry of a judgment for these fees and costs. JA818-820. In so doing, among other things, Appellants' counsel <u>added themselves</u> to the draft judgment, which was then executed by the Court below. JA818-820. *See also* JA822-827 (Appellants' counsel repeating same process with regard to amendment to judgment). This seems unorthodox, given the well-settled concept that a court's function in fee-shifting cases, like those under the FLSA, is to "shift fees for plaintiffs, not for lawyers." *Guillen v. Armour Home Improvement, Inc.*, Civ. A. No. DLB-19-2317, 2024 WL 1346838, at *24 (D. Md. Mar. 29, 2024). However, such tactics by Appellants' counsel are frankly emblematic of their approach in seeking court-approved compensation for their services, as readily demonstrated in this case.

Specifically, on a number of levels, this case was prosecuted not only to seek justice for Appellants themselves, but to relentlessly try to drive up the fees for their counsel. This dynamic was explored, in considerable detail, by Appellees in the proceedings below. JA389-422. As stated by Appellees,

> [T]his case was, from its inception, about the issue of hours worked by [Appellants] and little else.

2

But that didn't stop [Appellants] from litigating the case like a mass tort or major commercial litigation. They assigned a whole team of lawyers and support staff and were relentless in seeking out information and documents, much of which didn't matter and/or was never used, which generated higher and higher levels of fees.

JA395 (footnote omitted). *See also* JA389-400.

Appellants claim before this Court, as they did before the Court below, that Appellees were the driving force behind Appellants' exorbitant requests for fees because Appellees, supposedly, "contested nearly every issue in the case [and] forc[ed] this case to trial." Appellants' Br. at 3. This is nonsense, and the District Court readily saw through this charade. JA812-814. Here's the reality, as Appellees' counsel notified the Court below: "While undersigned counsel no doubt did his job in advocating for his clients and seeking to defend their interests in the litigation, [Appellants] had [Appellees] 'chasing their tails' for months on end with a seemingly never-ending barrage of requests for more and more." JA390. *See also* JA442 (Howard Hoffman, Esquire attested that "putting the [Appellants] through whatever burdens of proof that they have is hardly an opportunity for the vigorous level of billing that is exemplified here.").

Significantly, and further supporting Appellees' stance, Appellants' counsel's fee-driven litigation tactics have now garnered them the attention of multiple Judges who have taken them to task -- harshly -- for their behavior. *See Guillen v. Armour Home Improvement, Inc.*, Civ. A. No. DLB-19-2317, 2024 WL 3877603 (D. Md.

Aug. 20, 2024); *Guillen*, Civ. A. No. DLB-19-2317, 2024 WL 1346838.  *See also*

*Munoz v. Telligent Masonry LLC*, Civ. A. No. 21-2789, 2023 WL 6389129 (D.D.C.

Oct. 2, 2023).

As stated by one U.S. District Court Judge in Maryland earlier this year:

Guillen's attorneys at Melehy & Associates, LLC ("M&A") have petitioned for fees and costs that are utterly unreasonable: $233,861.04 in fees and $32,082.87 in costs, for a total of $265,943.91.  …. The firm has charged for non-compensable work.  It has overstaffed and overbilled.  It has billed based on verifiably inaccurate claims.  Counsel even claim to have paid for free parking.  And this is not the first time M&A has done these things.

….

In the last year alone, <u>multiple</u> <u>courts</u> <u>have</u> <u>denounced</u> <u>the</u> <u>firm</u> for exploiting the fee petition process to turn run-of-the-mill wage disputes into windfalls – not for plaintiff, but for plaintiff's counsel.  In pursuit of patently unreasonable fees, M&A has submitted petitions loaded with bloated time entries, and fees for unnecessary motions.  In case after case, the firm has billed excessive time on straightforward tasks and overstaffed, employing a small army of timekeepers, several of whom often billed simultaneously.  It is no wonder that courts have expressed doubt as to whether each of plaintiff's claimed costs is submitted in good faith.  M&A has a penchant for petitioning for fees that are simply unacceptable.

….

And considering the matter holistically, the fact that M&A has been repeatedly warned that the firm may not engage in these billing practices makes it even more unreasonable for counsel to have tried again here.  ….

….

The fee award M&A claims it is entitled to – $363,741.75 without costs, "voluntarily" reduced to a mere $233,861.04 … – is so outrageous as to <u>shock</u> <u>the</u> <u>conscience</u> <u>of</u> <u>this</u> <u>Court</u>. ….

....

A reasonable fee award serves the plaintiff. An unreasonable award serves only their lawyers. When counsel exploit the right to request a reasonable fee by demanding a windfall, they abuse the trust on which this critical part of our justice system depends. If counsel for every prevailing plaintiff filed fee petitions like M&A's, the system would be unmanageable, unreliable, and unworthy of the people it aspires to serve. We shift fees for plaintiffs, not for lawyers.

Guillen, through counsel, vindicated his rights under the FLSA. M&A is entitled to compensation for its service to Guillen. But M&A is not entitled to the excessive, unjustified, and unreasonable payout they seek. …. Guillen is awarded $21,703.26 in attorneys' fees and $9,336.18 in costs for a total of $31,039.44. ….

*Guillen*, Civ. A. No. DLB-19-2317, 2024 WL 1346838, at *1, *12, *17, *21, *24-

*25 (emphasis added) (citations, internal quotation marks, and internal brackets

omitted).[2]

As this Honorable Court has confirmed, one of the factors in assessing hourly

rates in the "the experience, reputation, and ability of the attorney." *McAfee v.*

*Boczar*, 738 F.3d 81, 88 n.5 (4th Cir. 2013) (citation omitted). These comments in

---

[2] It should be noted, in relation to this appeal, that the Judge in *Guillen*, while ultimately employing an "imprecise" alternative method to account for the hourly rates of Appellants' counsel, concluded, like Judge Chuang, that "<u>reasonable</u> <u>rates</u> for M&A are at the high end of the Guidelines: $475 per hour for Mr. Melehy, $475 per hour for Ms. Melehy, $300 per hour for Mr. Balashov, and $150 per hour for M&A's paralegals." *Guillen*, Civ. A. No. DLB-19-2317, 2024 WL 1346838, at *4 (emphasis added).

*Guillen* (and other cases) do not speak, *per se*, to Appellants' counsel's experience or ability. However, they would seem to have some bearing on the subject of their "reputation," at least in the eyes of the judiciary. As indicated in the *Guillen* case, Appellants' counsel has been <u>denounced</u> by multiple courts and has <u>shocked the conscience</u> of a member of the bench. And, to determine a reasonable hourly rate, district courts are called upon, among other things, to <u>compare</u> the reputations of the fee-petitioning lawyers with that of other lawyers in the community. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Duprey v. Scotts Co. LLC*, 30 F. Supp.3d 404, 412 (D. Md. 2014). Certainly, at this point, the reputation of Appellants' counsel before the courts appears to have sustained a serious blow.[3]

When Appellants' counsel recently sought reconsideration from the Court in the *Guillen* case, counsel asserted that the Court's sizable reduction of their fees would cause a "chilling effect" that would discourage other attorneys from taking on FLSA cases. *Guillen*, Civ. A. No. DLB-19-2317, 2024 WL 3877603, at *11. In a passage that speaks directly to the comparative reputation issue, the District Court disagreed and drew a stark distinction between Appellants' counsel versus other attorneys. According to the District Court:

---

[3] No doubt cognizant of this dynamic, it bears mentioning that the word "reputation" does not appear anywhere in Appellants' Brief despite its existence as a legitimate factor in determining hourly rates.

This Court has no intention of deterring the representation of low-wage workers in wage-and-hour cases in the District of Maryland or elsewhere. ….

The Court's ruling on the fee petition in this case should not hinder those noble aims or deprive those who serve them of the compensation they deserve. …. The fee award here was not a sweeping statement about how all plaintiffs' firms litigate all FLSA cases or how all plaintiffs' attorneys should be compensated. It was a narrow statement about how M&A litigated this case and how M&A should be compensated for its work in this case. M&A's fee petition in this case is unrepresentative of ordinary practice.

The Court awarded M&A a small percentage of the fee the firm sought because of M&A's distinctive mistakes and misconduct. …. M&A might have received a larger award for its service to Mr. Guillen if the firm had made a serious, good-faith effort to keep time accurately, staff tasks appropriately, and submit a credible fee petition. M&A did not receive a larger award because it did not meet those reasonable requirements.

At the end of the day, M&A's argument that this ruling will chill plaintiffs' attorneys from bringing meritorious FLSA cases implies that other plaintiffs' attorneys abuse the fee petition process as M&A has. That implication is unwarranted. The Court thinks far too highly of the plaintiffs' bar to think M&A's conduct and fee petition in this case are reflective of how most FLSA cases are litigated.

*Id*. at *12.

Whether these views from the bench will adversely impact Appellants' counsel's future fee petitions remains to be seen. But the above-quoted distinction drawn between their practices versus those of other attorneys certainly could -- and arguably should -- come into play.

In keeping with this pattern of past behavior, as described by more than one Judge, Appellants' counsel now comes before this Court continuing their relentless push for more and more. They are pursuing an even higher recovery of money from Appellees through the only remaining available means -- an appeal. "The Supreme Court has instructed that '[a] request for attorney's fees should not result in a second major litigation.'" *Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Yet, unsurprisingly given the above, here we are.

## IV. SUMMARY OF ARGUMENT

For the numerous reasons detailed below, *see infra* Part V, the District Court did not err in its calculation of hourly rates for Appellants' counsel. The proper process was followed, the proper factors were applied, and the resulting rates awarded were reasonable.

## V. ARGUMENT

### A. Standard of Review and Wide Discretion Afforded District Courts in Deciding Fee Awards

As stated by the U.S. Supreme Court over a decade ago:

The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's

> time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation. We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (citations and internal quotation marks omitted).

In keeping with these concepts, appellate courts from across the nation have made clear that district courts have wide discretion in awarding reasonable attorney's fees, which should not be disturbed in the absence of an abuse thereof. *See Vasconcelo v. Miami Auto Max, Inc*., 981 F.3d 934, 940 (11th Cir. 2020) ("The determination of a reasonable fee pursuant to section 216(b) of the Fair Labor Standards Act is left to the sound discretion of the trial judge and will not be set aside absent a clear abuse of discretion." (citation and internal quotations marks omitted)); *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019) (district court "has great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar."); *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) ("The Supreme Court has consistently held that the interest in uniformity of fee awards is not great enough to justify closer appellate scrutiny …."); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999) ("While the award of fees [under the FLSA] is mandatory, the district court has 'wide latitude' in determining the amount of the fee." (citation omitted)); *Fegley v. Higgins,* 19 F.3d 1126, 1134

(6th Cir. 1994) ("An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge.") (citation omitted)).

The law in this Circuit, dating back decades, is the same. *See Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) ("The payment of attorney's fees to employees prevailing in FLSA cases is mandatory. The amount of the attorney's fees, however, is within the sound discretion of the trial court.") (internal citation omitted)). In two recent cases, this Honorable Court has further elaborated on the reasons behind the wide level of latitude given to district courts on the subject of fees:

> We review a district court's award of attorney's fees for an abuse of discretion. *See Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (explaining that our review of an attorney's fees award is "sharply circumscribed" and that a fee award should not be overturned unless it is "clearly wrong" (internal quotation marks omitted)). That standard is informed by the "ringside view" enjoyed by district courts of the conduct of the parties and the quality of the lawyers' work in the case, giving rise to an inherent advantage in formulating appropriate fee awards. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). And protracted disputes over the finer points of fee calculations promote only "appellate second-guessing of ... what essentially are factual matters," thereby serving a limited purpose at best. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Marketing, Sales Practices and Prods. Liability Litig.*, 27 F.4th 291, 301 (4th Cir. 2022). Soon after this *Lumber Liquidators* case, this Court similarly explained that its "abuse-of-discretion review of the district court's fees determination is <u>extremely</u> <u>deferential</u>.

Because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award <u>must</u> <u>not</u> <u>be</u> <u>overturned</u> <u>unless</u> <u>it</u> <u>is</u> <u>clearly</u> <u>wrong</u>." *Harwood v. American Airlines, Inc.*, 37 F.4th 954, 960 (4th Cir. 2022) (emphasis added) (citations, internal quotations marks, and internal bracket omitted). *See also Benjamin v. Sparks*, 986 F.3d 332, 345 (4th Cir. 2021) ("'[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance.'" (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008))).

And the deference shown to district courts regarding the awarding of reasonable fees should, in Appellees' estimation, be even more pronounced in cases like this one involving a bench trial where there is no other factfinder to create any degree of separation between the Judge, the evidence, and the verdict in the case. *See, e.g., Wright v. Brown*, 993 F.2d 1541 (table) (4th Cir. 1993) (unpublished) ("We also note that the circumstances of this case make it less likely that the district court erred.  This was a bench trial.  Certainly, the district court was in the best position to determine what would, or would not, help it determine the issues in this case."). Judge Chuang, who wrote the highly-detailed "Post-Trial Findings of Fact and Conclusions of Law" in this case, *see* JA139-150, had a hands-on relationship with

all of the inner workings of the parties' litigation that simply cannot be replicated by this Honorable Court. His Honor's ruling should stand.

## B. Reasonable Fees and the *Johnson* Factors

Appellants sued Appellees under two statutes which both mandate the recovery by a successful plaintiff of their <u>reasonable</u> attorney's fees from a defendant employer. *See* 29 U.S.C. § 216(b); Md. Code Ann., Labor & Employ. § 3-427(d)(1). Needless to say, this dynamic calls upon a trial court to assess, analyze, and determine the objectively-reasonable amount of fees through an analysis of what constitutes objectively-reasonable hourly rates and an objectively-reasonable number of hours expended, as opposed to simply awarding the rate and hours a plaintiff's attorney desires. *See Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an <u>objective</u> <u>basis</u> on which to make an initial estimate of the value of a lawyer's services." (emphasis added)). *See also Lyle v. Food Lion, Inc*, 954 F.2d 984, 988 (4th Cir. 1992) (same). In making this assessment, district courts in this Circuit are instructed that

> proper calculation of an attorney's fee award involves a three-step process. First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714,

12

717-19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*McAfee*, 738 F.3d at 88 (citations, footnote, and internal quotation marks omitted).

Importantly, all three of these steps are accounted for, and addressed at length, in the District Court's decision herein.[4] JA805-816.

The factors to be considered in determining the lodestar figure have become commonly known as the *Johnson* factors. They are as follows:

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 n. 5 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)). Critically, it is well-settled that these factors are to be applied by a district court to both parts of the lodestar calculation -- the number of hours and the hourly rate. *See id* at 88. Specifically, as explained by this Court nearly 30 years

---

[4] In this appeal, however, only the first of the three steps is at issue since Appellants' counsel are only challenging the District Court's calculation of their hourly rates.

13

ago, "*Johnson* expressly contemplates that these factors be used *both* in calculating the hourly rate <u>and</u> the reasonable number of hours expended on a case." *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76 (4th Cir. 1995) (italicized emphasis in original) (underlined emphasis added). This remains the case to this day. *See Lumber Liquidators*, 27 F.4th at 303; *Harwood*, 37 F.4th at 960. *See also U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 (4th Cir. 2009) ("In calculating an appropriate attorneys' fee award, a district court must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the *Johnson/Barber* factors when making its lodestar determination." (citation omitted)). *See generally Jackson v. Estelle's Place, LLC*, 391 Fed. Appx. 239, 243 (4th Cir. 2010) (per curium) (unpublished) ("Like most (if not all) of the courts of appeals, we have directed that in deciding what constitutes a reasonable number of hours <u>and</u> the appropriate hourly rates (i.e., in calculating the lodestar fee), a district court looks to the … twelve [*Johnson*] factors …." (emphasis added)); *Schwartz v. Rent–A–Wreck of Am.*, 261 F. Supp.3d 607, 618-19 (D. Md. 2017) ("In deciding what constitutes a 'reasonable' number of hours expended <u>and</u> 'reasonable' hourly rate, the Court is guided by the factors set forth in *Johnson* …." (emphasis added)).

Here's how the District Court below characterized this same concept in its fees decision: "In determining the reasonableness of <u>the</u> <u>hourly</u> <u>rates</u> <u>and</u> <u>hours</u> <u>worked</u> to be used in a lodestar calculation, the United States Court of Appeals for

the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson*…." JA807 (emphasis added). In other words, the Court applied this principle of law <u>precisely</u> as directed by this Honorable Court.

## C. Appendix B of Local Rules

Dating back to at least 1998, *see Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 651 (D. Md. 1998), the District Court in Maryland has included an "Appendix B" to its Local Rules entitled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases."[5] While Appendix B has multiple component parts, and should be examined in its entirety, the focus of Appellants' attention is on the so-called "Guidelines Regarding Hourly Rates" set forth therein. *See* U.S. Dist. Ct., Dist. Md., Loc. R. at Appx. B. These Guidelines read as follows:

Guidelines Regarding Hourly Rates*

    a.    Lawyers admitted to the bar for less than five (5) years: $150-225.
    b.    Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.
    c.    Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.
    d.    Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425.
    e.    Lawyers admitted to the bar for twenty (20) years or more: $300-475.
    f.    Paralegals and law clerks: $95-150.

---

[5] Such local rule provisions are permissible under Fed. R. Civ. P. 54(d)(2)(D). *See also id*. at Advisory Committee's Note to 1993 Amendment.

*Id.* The asterisk to the Guidelines directs the reader to the following commentary

from the District Court regarding the rates:

> These rates are intended solely to provide practical guidance to lawyers
> and judges when requesting, challenging, and awarding fees. The
> factors established by case law obviously govern over them. One factor
> that would support an adjustment to the applicable range is an increase
> in the cost of legal services since the adoption of the Guidelines. The
> Guidelines, however, may serve to make the fee petition less onerous
> by narrowing the debate over the range of a reasonable hourly rate in
> many cases. The Court recognizes that there are attorneys for whom,
> and cases for which, the market rate differs from these guideline rates.
> In any event, the Court expects all claims to be appropriately supported.

*Id.*

It is neither Appellees' obligation nor focus to defend Appendix B hourly

rates. And Appendix B is not binding on the District Court, as the District Court

itself has made clear in its above-quoted commentary.[6] The pertinent inquiry is not

whether the Court below awarded rates within or outside the ranges of rates in

Appendix B. Rather, it is whether, within the wide bounds of discretion its afforded,

said Court selected rates that were reasonable given the dynamics of this case and

---

[6] Appellants cite *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018) to support the notion that a district court's use of court-created fee schedules can be improper. *See* Appellants' Br. at 13. However, unlike the instant case, the *Vogel* case obviously took place outside this Circuit, was not contested on appeal by defendant-appellee, and involved a very narrow form of fee schedule relating solely to default judgments that was relied upon by the lower court to the wholesale exclusion of lodestar; it also included a spirited dissent. *See Vogel*, 893 F.3d at 1155-69. As such, it bears no material resemblance to the case before this Court, and should have no impact on the Court's consideration of this appeal.

the *Johnson* factors. Frankly, Appellees would have preferred for the District Court to have selected lower rates for some of Appellants' attorneys. JA413-414. *See also* JA403. But the lower Court had the discretion to do what it did here, which is the main reason why Appellees didn't appeal[7] and why this Court should leave the District Court's ruling undisturbed. Long story short, under the circumstances of this particular case, for the reasons explained by the Court below, hourly rates that happen to fall within the ranges of Appendix B are clearly reasonable.

Appellants' counsel, not to mention *Amici Curiae*, act as though Appendix B has unfairly created some sort of impenetrable ceiling that is preventing the windfall of fees that would otherwise come to them. However, it is Appellees' contention that the rates awarded in this case would have been the same even if the ranges had been more recently increased. For instance, focusing on the top range of $300 to $475 per hour as an example, if this range were to increase by, say, $100, and go up to $400 to $575 per hour, the Court below still could have reasonably awarded $475 per hour to the more experienced of Appellees' attorneys in this case -- because it's never purely about the ranges. It's ultimately about what's reasonable. And what the District Court awarded was, in fact, reasonable. Indeed, from Appellees' perspective, it was more than reasonable to Appellants. That should end the inquiry.

---

[7] Appellees' other motivation for not appealing was to endeavor, yet again, to minimize their incurrence of legal fees, as they have been trying to do for literally years now.

**D. Hoffman's Sworn Declaration**

*Amici Curiae*, in their Brief, contend that Fourth Circuit precedent holds that "'competent evidence' of market rates is typically the affidavits of counsel who practice in the relevant market." *Amici Curiae* Br. at 4. Well, despite Appellants' efforts to discount or dismiss it, Appellees secured just such an affidavit and presented it to the Court below. *See* JA427-447. Specifically, in his 21-page Declaration, Howard Hoffman, Esquire, who practices in the same county as Appellants' counsel, *see infra* Part V.E., testified, in part, as follows:

> I believe I am qualified to testify as an expert witness in the following: (1) the general attorney rates for lawyers whose practice concentrate in employment law; (2) the general manner in which law firms reasonably litigate a claim by an individual for damages under the FLSA, particularly in a case such as this; … (4) the overall reasonableness of fees requested by Plaintiffs, and my impression of what fees would be sufficient to incentivize counsel to undertake representation of the Plaintiffs in this case. ….
>
> 3. It is my position that I am qualified to render an opinion in this case, as to each of these issues, to assist the Court in reaching a fair determination as to the parties' fee dispute. My opinions are informed by years of actual experience, … research, observations, and review of court decisions ….
>
> ….
>
> I have extensive experience prosecuting and defending wage and hour cases and other employment law cases. ….
>
> ….
>
> 9. Based on my education and experiences, I consider myself knowledgeable of the ethics in billing fee paying clients and I consider

myself knowledgeable in the litigation of legal fees (either on behalf of my client or defending a fee claim by an adversary).

....

*General Attorney Rates In The Locality*

14. I represent employers and employees on an hourly basis, but it is not at all clear to me that Melehy & Associates, LLC ("M&A") does so – and at what degree of frequency and what level. ....

15. I do believe, as a general matter, that an attorney's actual billing rate *may* be a useful starting point to evaluate a reasonable hourly rate. I also believe that opposing counsel's actual billing may be a useful starting point to evaluate a reasonable hourly rate. That said, no one would expect a reasonable lodestar rate to be the claimed hourly rate of an attorney (or the opponent's lawyer's hourly rate).

16. That said, in order to evaluate M&A's claim of fees, I would need to know more about their generalized claims that they charge $625.00/hour for Omar Melehy, for example, or $575/hour for Suvita Melehy, or $350/hour for Andrew Balashov. I would want to know about the number of such clients and the frequency in which they bill actual paying clients, and whether those invoices are heavily discounted. ....

17. I am aware of no lawyers in the Montgomery County, Maryland area that can generally command a rate of $625/hour in employment cases, especially representing individual employees. Charging $625/hour is difficult: as mentioned, individuals have been typically fired and do not have sufficient means, and businesses have many legal options as consumers. The competition for employers is fierce and obtaining that work often requires getting into "beauty contests" with law firms who have marketing prowess. My general awareness of market rates led me to conclude that well-seasoned lawyers, representing individuals and small to medium sized businesses in Montgomery County, Maryland, are between $275/hour and $475/hour. Large businesses with very established relationship[s] who rely on "corporate" law firms, and who may be more dependent on those law firms, may charge more in hourly legal fees than $400/hour,

perhaps as high (or even higher) as the amounts claimed by M&A, but I cannot say those hourly fees are reasonable. ….

18.   I therefore do not agree that M&A should be awarded the requested hourly fees, because there is not sufficient information to inform my opinion as to their actual billing rates (based on generalized claims; anyone with a plaintiffs practice can set an hourly rate but how many actually pay it?) and the rates are not consistent with the heavy competition amongst lawyers and law firms for fee-paying clientele (and the quality of those seasoned lawyers competing for that work that charge between $275/hour and $475/hour).

19.   I also do not agree that the hourly rate for Mr. Balashov is reasonable. I find it difficult to charge $350/hour to individuals and businesses, after 23 years of practice. (Even if you can charge $350/hour, there is usually a total limit that any legal consumer is able to spend/afford).

20.   Thus, I do not believe - based on the information provided to me (ECF Doc. 112 and its attachments) that the claimed hourly rates are reasonable.   Moreover, I do not believe that the hourly rates are reasonable for the additional following reasons:

….

The competition among lawyers for Plaintiff side FLSA cases is very substantial.  There are many lawyers who take worker FLSA cases and do not otherwise take employment cases, principally because they believe the cases are easy.  (This is not to say that they handle those cases well).  If the goal is to achieve a fee that will incentivize counsel to take a case, query whether the competition for those cases should inform the reasonable hourly fee.  Based on my review, this FLSA case could not have been more straightforward and that is true regardless of whatever the Defendants did to challenge the Plaintiffs – denials of coverage are easy to address in discovery and trial and claims of independent contractor status are relatively easy to evaluate and address in litigation.

….

[T]his very straightforward case would be highly desirable amongst the employment bar representing employees, with liability being fairly transparent. I can think of multiple law firms and lawyers that would be very eager to represent the workers in this case, many of whom would be able to speak Spanish or not need translation services from a staff member. Simply put, the competition for this case is intense whereas the competition to advance other employment cases, such as termination/retaliation cases and inmate FLSA rights - not so much. I see this case requiring no specific skill set and I would have been able to handle this case quite easily five years out of law school. ….

24.  Thus, the desirability of this case (competition amongst lawyers for FLSA cases), combined with the relatively straightforward and easy issues, does not warrant substantial hourly fees to incentivize counsel to accept this case. We would have accepted this case on a statutory fee basis, if we knew that liability was fairly certain and we would have been willing to do so applying our historical rates located in Appendix B rates (found in the US District Court's Local Rules). I strongly believe that other lawyers would similarly take this case if they could be awarded similar rates located in Appendix B (found in the US District Court's Local Rules). Mr. Melehy should be compensated at $475/hour; Mrs. Melehy compensated at $400/hour; and Mr. Balashov compensated at $275/hour. …. These rates, while nine years out of date and deserving of judicial review, would reasonably incentivize professional counsel to undertake this representation.

….

*General Manner In Which Law Firms Litigate Cases Such As This*

….

29.  It is my opinion that a single lawyer, perhaps with the assistance of a single paralegal … or an associate attorney could have handled all aspects of this case, from pleading to trial. The fact that the Defendant was represented by a solo attorney should provide some indication that the needs of this case were not so great as to demand nine (9) timekeepers.

JA427-441 (footnotes omitted) (italicized headings deemphasized).

Appellants pursue a two-pronged, but highly ineffective, attack on this sworn testimony. First, they hyperbolically argue, despite the indisputable existence of Hoffman's Declaration, that their evidence regarding the hourly rate issue was "largely unrefuted" or "largely undisputed," and that evidence contrary to Appellants' was "absent in this case." Appellants' Br. at 1, 15, 17, 20. As demonstrated by the excerpts of Hoffman's Declaration reprinted herein alone, this argument is nonsensical. The Declaration plainly and unmistakably challenges and rebuts many of Appellants' contentions and provided the District Court with considerable pertinent information related to the determination of reasonable fees under the circumstances of the case. Appellants, not to mention *Amici Curiae*, act as though Appellants' fee petition in this case was unopposed. It wasn't.

Second, Appellants argue, incorrectly, that the District Court "ignored" Hoffman's Declaration. Appellants' Br. at 10. While it is true that the District Court's decision expressly references Michal Shinnar, Esquire's affidavit produced by Appellants but not Hoffman's Declaration, *see* JA808-809, the Court literally said it had "reviewed the submitted materials" and later went on to say that, "based on the present record and a consideration of the relevant *Johnson* factors, the Court finds that the legal work conducted here was not particularly novel or complex, and it did not require skill beyond the typical case. Under these circumstances, the Court will not approve hourly rates above those contemplated by the Local Rules." JA805,

JA809 (emphasis added). Hoffman's lengthy Declaration was definitely "submitted" to -- and thereby made part of the "present record" before -- the District Court.[8] As such, the lower Court's decision regarding hourly rates, which was based, in part, on that record, was based, in part, on Hoffman's Declaration. Moreover, it is nonsensical to presume, as Appellants do, that the District Court did not consider Hoffman's Declaration since an affidavit like his is an important part of a court's reasonable hourly rate analysis. This Court has made clear that the evidence "competent to show prevailing market rates includes affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *McAfee*, 738 F.3d at 91 (internal quotation marks and citation omitted). The District Court even recited this very legal concept in its ruling. JA809. And Hoffman's Declaration clearly constitutes such an affidavit. So, it would not have been "ignored," as Appellants claim. Lastly, the District Court's review of, and reliance upon, Hoffman's Declaration is further evidenced by the fact that the Court below, in its decision, mirrored many of the same sentiments as Hoffman. *Compare* JA427-447 *with* JA805-816. Indeed, the Court awarded Mr. Melehy the precise hourly rate that Hoffman had opined was reasonable. JA437, JA809. So, all of this is nothing more than a red herring.

---

[8] Indeed, Appellees, in their briefing below, made sure to highlight its importance on the very first page of their opposition to Appellants' fee petition. JA389.

### E. It is Commonplace for Counsel in Fee-Shifting Cases to Seek Hourly Rates <u>within</u> Appendix B Ranges

Just last year, this Honorable Court explained the following:

> Our deference to district courts in determining a reasonable fee is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. In this field, <u>the district courts have longstanding expertise and enjoy a decided advantage over appellate courts</u>.

*Stinnie v. Holcomb*, 77 F.4th 200, 217 (4th Cir. 2023) (citations omitted) (emphasis added). Needless to say, this "longstanding expertise" on the part of district courts emanates, at least in part, from the numerous fee petitions submitted by counsel for the court's review and consideration. Long story short, the district courts, largely unlike this Court, are interacting with local attorneys in their jurisdictions on a near-daily basis and are commonly called upon to rule on the issue of fees sought by some of those same attorneys. This is why, consistent with *Johnson* factors five and 12, *see McAfee*, 738 F.3d at 88 n. 5, "prior fee awards constitute evidence of a prevailing market rate that may be considered in fee-shifting contexts …." *Eastern Associated Coal Corp. v. Director, Office of Workers' Comp. Programs*, 724 F.3d 561, 572 (4th Cir. 2013). *See id.* at 575 (referencing, in parenthetical, that "the prevailing market rate can be established with reference to 'information concerning recent fee awards by courts in comparable cases'" (quoting *Spell v. McDaniel*, 824

F.2d 1380, 1402 (4th Cir. 1987))); *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 251 (4th Cir. 2004) (same).

So, what did the landscape of fee petitions before the District Court in Maryland look like during the period extending from just before the filing of Appellants' lawsuit in August 2020 until the close of the parties' lower Court litigation in November 2023? JA006-020. When you take a look, while there are certainly some outliers -- and Appellants' counsel, in particular, has pushed for higher rates, as they did in this case -- it was <u>very</u> <u>commonplace</u> for attorneys to request from the District Court, entirely of their own volition, hourly rates that fell <u>within</u> the Appendix B ranges.[9] This was especially true for a number of plaintiff's attorneys, like Appellees' affiant, Hoffman, whose office are located in <u>exactly</u> the same locale as Appellants' counsel -- Montgomery County, Maryland. It was also

---

[9] It bears mentioning that even Appellants' counsel has sought rates <u>within</u> Appendix B ranges as recently as at least January 2022 -- just one year before the trial in the instant case. *See* Pl.'s First Suppl. Memo. in Support of His Previous Mot. for Att'y's Fees and Costs (ECF No. 65) in *Molina v. KP Stoneymill, Inc.*, Civ. A. No. 8:19-cv-3123. A discussion of other occasions when this occurred was set forth in Appellees' briefing below, *see* JA401, though it should be noted that Appellees made a typographical error concerning one of the case citations therein, citing to "Civ. A. No. 8:19-CV-1165," *see* JA401, rather than Civ. A. No. 8:19-cv-3123, in relation to the *Molina* case.

true in many wage and hour cases, like the instant case.  Listed below are just <u>some</u> of these cases.[10]

> *Jahn v. Tiffin Holdings, Inc.*, Civ. A. No. SAG-18-1782, 2020 WL 4436375, at *6-*7 (D. Md. Aug. 3, 2020) (plaintiff's counsel in <u>wage and hour case</u>, including Howard Hoffman, Esquire, of <u>Rockville, Montgomery County, Maryland</u>, sought "compensation pursuant to an hourly rate within the applicable Guidelines range [of Appendix B]" and said rates were deemed "reasonable in this legal market" by Court).

> *Bowen v. Athelas Inst., Inc.*, Civ. A. No. DLB-19-2628, 2020 WL 4471517, at *3 (D. Md. Aug. 4, 2020) (in decision issued following parties' settlement, plaintiffs' counsel in <u>wage and hour case</u> sought hourly rates within ranges in Appendix B, and said rates were accepted by Court).

> *Kirk T. v. Saul*, 489 F. Supp.3d 411, 417 (D. Md. 2020) (in decision related to social security proceeding, plaintiff's counsel requested hourly rate under fee-shifting statute that fell "within the guidelines set forth in the Local Rules," and said rate deemed "reasonable" by Court).

> *Ramirez v. 316 Charles, LLC*, Civ. A. No. SAG-19-03252, 2021 WL 662185, at *4 (D. Md. Feb. 19, 2021) (in decision issued following successful bench trial, plaintiff's counsel in <u>wage and hour case</u> sought "compensation pursuant to an hourly rate within the applicable Guidelines range [of Appendix B]" and said rates were deemed "reasonable in this legal market" by Court).

> *Castro v. Early Learning Language Academies, LLC*, Civ. A. No. CBD-18-2421, 2021 WL 915106, at *6 (D. Md. Mar. 9, 2021) (in decision issued following parties' settlement, plaintiffs' counsel in <u>wage and hour case</u>, including Phil Zipin, Esquire, of <u>Silver Spring, Montgomery County, Maryland</u>, sought hourly rates "within the guidelines" which were deemed "reasonable" by Court).

---

[10] As the Court will see, nearly all of the listed cases are unpublished.  This could not be avoided as it is relatively uncommon for the District Court to publish their fee petition rulings.  Indeed, the same is true of the ruling at issue in this appeal.

*Jones v. Time Org. LLC*, Civ. A. No. DLB-20-1935, 2021 WL 1117275, at *3 (D. Md. Mar. 24, 2021) (in decision issued following parties' settlement, plaintiff's counsel in <u>wage</u> <u>and</u> <u>hour</u> case "agree[d] that the within-guidelines amount of $425 per hour would be reasonable for an attorney with her experience," and said rate was accepted by Court).

*Drummond v. David's Loft Clinical Programs*, Civ. A. No. DLB-20-2881, 2021 WL 1610108, at *3 (D. Md. Apr. 26, 2021) (in decision issued following parties' settlement, plaintiffs' counsel in <u>wage</u> <u>and</u> <u>hour</u> case, including James Rubin, Esquire, of <u>Rockville,</u> <u>Montgomery</u> <u>County,</u> <u>Maryland,</u> sought hourly rates "consistent with this Court's [Appendix B] guidelines" and said rates were accepted by Court).

*Orellana v. Don Pollo of Bethesda, Inc.*, Civ. A. No. PWG-20-2795, 2021 WL 2187014, *4 (D. Md. May 28, 2021) (in decision issued following parties' settlement, plaintiff's counsel in <u>wage</u> <u>and</u> <u>hour</u> <u>case</u> sought hourly rates "within the presumptively reasonable rates set forth in Appendix B," and said rates were accepted by Court).

*Gue v. Shree Pashuapati Corp.*, Civ. A. No. DKC-21-44, 2021 WL 2414866, at *3 (D. Md. June 15, 2021) (in decision issued following parties' settlement, plaintiff's counsel in <u>wage</u> <u>and</u> <u>hour</u> <u>case</u> sought hourly rate "consistent with this Court's [Appendix B] guidelines," and said rate was accepted by Court).

*Dewitt v. Ritz*, Civ. A. No. DKC 18-3202, 2021 WL 3187981, at *3 (D. Md. July 28, 2021) (in decision issued in civil rights case, plaintiff's counsel, pursuant to 42 U.S.C. § 1988, sought "hourly rates at the low end, or lower, of the rates contained in the guidelines," which were accepted by Court).

*Victor Stanley, Inc. v. SCH Enterprises, LLC*, Civ. A. No. RDB-06-2662, 2021 WL 3510588, at *5 (D. Md. Aug. 10, 2021) (Court, in relation to award of attorney's fees to plaintiff's counsel as a sanction, found that requested "rates are within the ranges set forth in Appendix B, and this Court is entirely satisfied that the requested rates are reasonable in this case").

*Bocangel v. Warm Heart Family Assistance Living, Inc*., 561 F. Supp.3d 534, 538-39 (D. Md. 2021) (in decision following judgments entered in

favor of plaintiffs, plaintiffs' counsel, including Gary Gilbert, Esquire and Michal Shinnar, Esquire,[11] of <u>Silver Spring, Montgomery County, Maryland</u>, sought hourly rates "within the presumptively reasonable range" under Appendix B, and Court "adopt[ed] the requested rates unchanged").

*Wade v. CBH Health, LLC*, Civ. A. No. PX-20-3573, 2021 WL 8269082, at *6 (D. Md. Oct. 15, 2021) (in decision issued following parties' settlement, plaintiffs' counsel in <u>wage and hour case</u>, Deyka Spencer, Esquire, of <u>Rockville, Montgomery County, Maryland</u>, sought an hourly rate "within the Guidelines in the Local Rules," which were accepted as "reasonable" by Court).

*Wegner v. Carahsoft Tech. Corp.*, Civ. A. No. PJM 20-00305, 2022 WL 316653, at *5 (D. Md. Feb. 1, 2022) (in decision issued following parties' settlement, plaintiffs' counsel in <u>wage and hour case</u> sought "blended" hourly rate within the applicable range of Appendix B, which was accepted by Court).

*Gonzalez v. Mogotillo Rest., LLC*, Civ. A. No. TDC-21-2063, 2022 WL 908898, at *4 (D. Md. Mar. 29, 2022) (in report and recommendation issued following default judgment, plaintiff's counsel in <u>wage and hour case</u> requested that "Court award attorney's fees at the rate of $350 for each attorney, which is within the presumptively reasonable rate established in the Local Rules" and was deemed "reasonable" by U.S. Magistrate Judge), *adopted by* 2022 WL 2400758 (D. Md. Apr. 19, 2022).

*Trustees of Nat'l Electrical Benefit Fund v. Loga Holding, LLC*, Civ. A. No. PWG 21-cv-2917, 2022 WL 3100759, at *4 (D. Md. Aug. 4, 2022) (in decision issued following default judgment, plaintiff's counsel in case involving statutory fee-shifting sought hourly rate that "falls within the guidelines range" which was accepted by Court).

*Juarez v. A.M.C. Constr., LLC*, Civ. A. No. 8:20CV-1508-PWG, 2022 WL 3586511, at *4 (D. Md. Aug. 22, 2022) (in decision issued following default judgment, plaintiff's counsel in <u>wage and hour case</u>,

---

[11]    Needless to say, this is the same attorney who submitted an affidavit in support of Appellants' fee petition before the Court below.  JA808-809.

Mariusz Kurzyna, Esquire, of <u>Silver Spring, Montgomery County, Maryland</u>, sought an hourly rate which "falls within the range of reasonable hourly rates provided in Appendix B to the Local Rules," and said rate was accepted as "reasonable" by Court).

*Combustion Science & Engineering, Inc. v. United Parcel Svc., Inc.*, Civ. A. No. RDB-21-3312, 2022 WL 4095299, at *2 (D. Md. Sept. 7, 2022) (in decision awarding attorney's fees under 28 U.S.C. § 1447(c), plaintiff's counsel sought fees "consistent with the Local Rules" and said rates were accepted as "reasonable" by Court).

*Smith v. David's Loft Clinical Programs, Inc.*, Civ. A. No. 21-cv-03241-LKG, 2022 WL 16553228, at *7 (D. Md. Oct. 31, 2022) (in decision issued following parties' settlement, plaintiffs' counsel in <u>wage and hour case</u> sought hourly rates "consistent with the guidelines set forth in the Court's Local Rules," and rates were accepted by Court).

*Johnson v. Helion Technologies, Inc.*, Civ. A. No. DKC 18-3276, 2023 WL 2478860, at *7-*9 (D. Md. Mar. 13, 2023) (in decision issued following successful jury trial, plaintiffs' trial counsel in <u>wage and hour case</u> sought hourly rates "within the guideline ranges," and said rates were accepted as "reasonable" by Court; plaintiff's appellate counsel, who worked *de minimis* number of hours on quickly-dismissed appeal, sought rates above guidelines, which were reduced).

*Marquez v. India Bazaar, Inc.*, Civ. A. No. 8:21-cv-01775-AAQ, 2023 WL 4086141, at 5 (D. Md. June 20, 2023) (in decision issued following parties' settlement, plaintiffs' counsel in <u>wage and hour case</u>, Bruce Godfrey, Esquire, of <u>Silver Spring, Montgomery County, Maryland</u>, sought hourly rates "within the permissible guidelines for attorneys with [his] experience," which were accepted by Court).

*Caruccio v. Marco Technologies, LLC*, Civ. A. No. 1:22-cv-01477-JRR, 2023 WL 11877446, at *2 (D. Md. Sept. 14, 2023) (Court, in relation to award of attorney's fees to defense counsel as a sanction, found that requested fees were "reasonable because they are unchallenged and within the presumptively reasonable guidelines range").

*Butler v. PP&G, Inc.*, Civ. A. No. 20-3084-JRR, 2023 WL 6517593, at *2 (D. Md. Oct. 5, 2023) (in decision issued following default

judgment, plaintiffs' counsel in <u>wage</u> and <u>hour</u> <u>case</u> sought hourly rates within the ranges of Appendix B and said rates were deemed "reasonable" by Court; counsel in case <u>included</u> <u>attorneys</u> <u>from</u> <u>Melehy</u> <u>&</u> <u>Associates,</u> <u>LLC</u>, though they were not amongst those seeking fees).

*G&G Closed Circuit Events, LLC v. Blow Fish House, Inc.*, Civ. A. No. 8:23-cv-0652-PX, 2023 WL 7016350, at *4 (D. Md. Oct. 25, 2023) (in decision issued following default judgment, plaintiff's counsel in case involving statutory fee-shifting, including attorney who had "more than 40 years' experience," sought "presumptively reasonable rates" under Appendix B, which were accepted by Court).

*Aguilar v. Hickman*, Civ. A. No. TDC-22-2184, 2023 WL 7299960, at *5 (D. Md. Nov. 6, 2023) (in report and recommendation issued following default judgement, plaintiffs' counsel in <u>wage</u> <u>and</u> <u>hour</u> <u>case</u> who had been "admitted to the bar for 40 years" sought an "hourly rate of $400 [which was] within the presumptively reasonable rates established by the Local Rules" and was deemed "reasonable" by Chief U.S. Magistrate Judge), *adopted by* 2023 WL 11225937 (D. Md. Nov. 30, 2023).[12]

Again, these attorneys, and the firms where they work,[13] are known to the District Court in Maryland. As this Honorable Court can no doubt imagine, these decisions in these cases would be readily available to, and within the institutional knowledge of, the District Court. And, consistently throughout the timeframe of Appellants' litigation against Appellees, these attorneys and these firms, over and over again, didn't even ask for rates above those in the Appendix B ranges. As such,

---

[12] It merits mentioning that this was Judge Chuang's case, and His Honor adopted the Report and Recommendation on November 30, 2023, just two days after the decision was issued in the case that is the subject of Appellants' appeal.

[13] It should be noted that some of the attorneys identified in the cases listed above work at the same firm.

these attorneys and firms themselves, independent of the District Court, have deemed the Appendix B hourly rates to be reasonable. Needless to say, lawyers are not "shrinking violets." If they felt higher rates were reasonable, they would have requested them. They didn't.

Indeed, this dynamic has remained the same even <u>after</u> the active litigation of this case, and well into 2024 -- in wage and hour cases and/or in cases handled by plaintiff's attorneys in Montgomery County. *See, e.g., Berman v. Mid-Atlantic Eateries, Inc.*, Civ. A. No. ABA-23-2840, 2024 WL 3597191, at *4 (D. Md. July 31, 2024) (in decision issued following parties' settlement, plaintiff's counsel in <u>wage and hour case</u>, including Howard Hoffman, Esquire, of <u>Rockville, Montgomery County, Maryland</u>, sought hourly rates "within the Appendix B range[s]," and they were accepted by Court); *Mancilla v. Chesapeake Outdoor Svcs., LLC*, Civ. A. No. 1:22-cv-00032-JMC, 2024 WL 2803947, at *5 (D. Md. May 31, 2024) (in decision issued following successful bench trial, plaintiff's counsel in <u>wage and hour case</u>, including Michael Amster, Esquire, of <u>Silver Spring, Montgomery County, Maryland</u>, sought hourly rates that were deemed "presumptively reasonable under the Court's guidelines [in Appendix B] given each attorneys' years of experience");[14]

---

[14] This case was actually cited by Appellants in their Brief, but Appellants neglected to advise this Court that counsel in the case did not even request above Appendix B rates. *Compare* Appellants' Br. at 5 *with Mancilla*, Civ. A. No. 1:22-cv-00032-JMC, 2024 WL 2803947, at *5.

*Carmona v. EBRR Logistics, LLC*, Civ. A. No. RDB-19-3077, 2024 WL 2113625, at
*3-*4 (D. Md. May 10, 2024) (in decision issued following default judgment against
one defendant and bench trial involving another, plaintiff's counsel in wage and hour
case "billed at rate of no more than $350 per hour, which is well within the guidelines
[under Appendix B] for his experience" and Court accepted rate as reasonable),
*amended in part by* 2024 WL 3554924 (D. Md. July 25, 2024); *Santos v. E&R Svcs.,
Inc.*, Civ. A. Nos. ABA-20-2737, ABA-22-3330, 2024 WL 1416564, at *4 (D. Md.
Apr. 2, 2024) (in decision issued following parties' settlement, plaintiffs' counsel in
wage and hour case, including James Rubin, Esquire, of Rockville, Montgomery
County, Maryland, sought hourly rates "within the range presumed reasonable in
Appendix B," and said rates were accepted by Court).

The above-listed cases, not to mention Hoffman's Declaration,[15] plainly
refute, on a number of levels, the argument made by Appellants' counsel to the Court
below that their desired "rates are equal to or below the market rates for legal
professionals who handle comparable cases." JA808. Indeed, the fee petitions
submitted in the listed cases were all filed by attorneys who were instructed by the
Local Rules of the District Court in Maryland to provide "the attorney's customary
fee for such like work [and] the customary fee for like work prevailing in the

_____

[15] Needless to say, these cases only give further credence to said Declaration.
It clearly provides a viable assessment of what is reasonable and of the reality for
practitioners in Maryland doing this type of work.

attorney's community …." U.S. Dist. Ct., Dist. Md., Loc. R. 109.2.(b). And these are the hourly rates the attorneys provided to the Court for its consideration -- ones within the ranges of Appendix B.

Despite Appellants' contentions, this is not some grand conspiracy wherein the U.S. District Court in Maryland is artificially imposing depressed hourly rates upon the plaintiffs' employment law bar, rendering attorneys unjustly economically disadvantaged on some level. This is the reality of what the Court is seeing coming <u>from</u> members of that bar. Hence, a U.S. District Court in Maryland reaching the conclusion, particularly in a wage and hour case, that the rates within the Appendix B ranges are reasonable is both understandable and justified. *See, e.g., Guillen*, Civ. A. No. DLB-19-2317, 2024 WL 1346838, at *3 (finding, earlier this year, that, "in the last several years, the clear consensus among judges in this district in FLSA fee petition decisions has been that the Guidelines rates are reasonable – including in cases involving M&A." (citations omitted)). *See also Chaten v. Marketsmart LLC*, Civ. A. No. PX-19-1165, 2020 WL 4726631, at *6 (D. Md. Aug. 14, 2020) (report and recommendation) (concluding that "the Guidelines' rates are more representative of a broader range of fees charged by practitioners appearing in federal court in Maryland" (internal quotation marks and citation omitted)), *adopted*

*without objection by* 2020 WL 13569350 (D. Md. Sept. 17, 2020).[16]  Conversely,

Appellants' hyperbolic claim in their Brief that "Appendix B rates are nowhere near

current market rates," *see* Appellants' Br. at 5, is neither understandable nor justified.

## F.  District Court Did Not Err

Most of Appellants' (and *Amici Curiae's*) arguments have been addressed and

refuted by Appellees above, but some additional examination of the issues is

warranted to further demonstrate that the District Court did not err.

For instance, in their endeavor to attack the District Court's use of Appendix

B in its ruling, Appellants cite the case of *Newport News Shipbuilding & Dry Dock

Co. v. Holiday*, 591 F.3d 219 (4th Cir. 2009) for the proposition that "an

administrative agency committed reversible error by basing a market rate

determination on a 10-year-old decision, because 'an hourly rate appropriate ten

years ago, arbitrarily adjusted with no regard to the facts of the case or the lodestar

factors, is not necessarily appropriate today.'"  Appellants' Br. at 15 (quoting

*Holiday*, 591 F.3d at 228).  Critically, however, that's not what happened in the case

before this Honorable Court.  First, the District Court is, needless to say, not an

administrative agency.  Second, and far more importantly, the District Court, in

---

[16]  It is worth noting that, in this *Chaten* case, in which Appellants' counsel
represented the plaintiff, they did seek rates higher than Appendix B, but then did
<u>not</u> <u>object</u> to the reduction of those rates to ones within the Appendix B ranges when
afforded the chance to do so.  *See Chaten*, Civ. A. No. PX-19-1165, 2020 WL
4726631, at *7, *adopted without objection by* 2020 WL 13569350.

assessing the appropriate reasonable hourly rate in this case, absolutely <u>did</u> take into account "the facts of the case[,] the lodestar [a/k/a *Johnson*] factors," and more. JA805-816.  While Appellees certainly invite this Court to review the lower court's complete analysis of this subject, which spans numerous paragraphs, the conclusion it reached was as follows:

> [B]ased on the present record and a consideration of the relevant *Johnson* factors, the Court finds that the legal work conducted here was not particularly novel or complex, and it did not require skill beyond the typical case.  Under these circumstances, the Court will not approve hourly rates above those contemplated by the Local Rules.  Indeed, where these rates have been consistently published in the Local Rules, application of hourly rates within the guideline ranges is consistent with the sixth *Johnson* factor, the attorneys' expectations at the outset of the litigation.
>
> At the same time, where the Court has not recently adjusted these rates for inflation, and where the rates are lower than the standard billing rates for Plaintiffs' counsel, the Court finds that the reasonable hourly rates are those at the high end of the guideline ranges set forth in the Local Rules.  For the same reasons, the Court finds that the reasonable hourly rates for paralegals and paraprofessional staff are those at the high end of the guideline ranges set forth in the Local Rules.

JA809.

Appellants do acknowledge, as they must, that the District Court <u>did</u> apply at least three factors from *Johnson* in determining reasonable hourly rates in this case: "(1) the work was 'not particularly novel or complex', (2) it 'did not require skill beyond a typical case', and (3) Appellants' counsel was on notice of the Appendix B rates when they took the case."  Appellants' Br. at 23-24 (quoting JA809).

Appellants then declare that the Court's ruling should nonetheless be reversed because its "analysis of those factors was arbitrary and conclusory and because it bore no direct relationship to an actual market rate analysis …."[17] *Id.* at 24.

Appellants are simply wrong. A district court's objective in these situations is to determine a reasonable sum of attorney's fees. There is no scientific equation for doing so, as this Court and the Supreme Court have recognized. *See J.D. ex rel. Davis v. Kanawha County Bd. of Educ.*, 571 F.3d 381, 387 (4th Cir. 2009) ("In *Hensley*, the Supreme Court noted that '[t]here is no precise rule or formula' for determining the amount of attorneys' fees, and that district courts 'necessarily [have]

---

[17] In their Brief, Appellant cite two unpublished decisions of this Court immediately following this declaration, namely, *Doe v. Kidd*, 656 Fed. Appx. 643 (4th Cir. 2016) (unpublished) and *Best Medical Intern., Inc. v. Eckert & Ziegler Nuclitec GmbH*, 505 Fed. Appx. 281 (4th Cir. 2013) (unpublished) (per curium). *See* Appellants' Br. at 24. Earlier in their Brief, they also cite to a third unpublished decision, *Lee v. Agape Health Mgmt., Inc.*, Nos. 23-1582, 23-1586, 23-1636, 23-1647, 2024 WL 3565309 (4th Cir. July 29, 2024) (unpublished), for a similar proposition. *See* Appellants' Br. at 15-16. Specifically, Appellants argue that this Court, in all of these cases, reversed the district court's decision below because of a failure by the court to present a sufficient justification for their findings regarding fees. *Id.* at 15-16, 24. However, what becomes clear upon review of these decisions, putting aside that they're all unpublished, is that all of them involved situations in which the district court had provided literally <u>zero</u> reason for its hourly rate calculation and engaged in literally <u>zero</u> analysis, rendering the cases readily and wholly distinguishable from the instant case. *See Lee*, 2024 WL 3565309, at *3 (court below did not even "mention," "discuss[]", or "consider" factors used in calculating lodestar); *Doe*, 656 Fed. Appx. at 655 n.2 ("The district court did not provide any reasons on why … rates should be reduced."); *Best Medical Intern., Inc.*, 505 Fed. Appx. at 284 (district court merely stated, "'Taking the *Johnson* factors into account, the Court finds the hours expended and the rates billed to be reasonable.'").

discretion' in such matters." (quoting *Hensley*, 461 U.S. at 436-37)). However, there is a process to follow, and it was followed here. The process begins how the Court below began it -- with the determination of a reasonable hourly rate. JA807-809. In so doing, the Court incorporated certain *Johnson* factors. JA807-809. This Honorable Court has made it abundantly clear, on multiple occasions, that it is entirely appropriate to do so. *See supra* Part V.B. Indeed, nearly 30 years ago, in *Trimper v. City of Norfolk, Va*., 58 F.3d 68 (4th Cir. 1995), this Court provided the following analysis:

> [T]he *Johnson* factors expressly contemplate the calculation of the hours expended and the hourly rate in precisely the manner in which the district court did that calculation. The district court reduced the hourly rate by looking at the following factors: (1) the market rate, *as evidenced in affidavits,* (2) the low level of skill required properly to perform the simple legal services rendered, (3) the zero opportunity cost to Graber by taking the case, (4) the limited amount of legal work required prior to settlement of the lawsuit, (5) the brief period of Graber's employment during the merits phase of the case, and (6) the insubstantial amount in controversy, namely a $100 judgment. …. [T]hese factors are precisely the considerations that are central to the *Johnson* analysis, and the district court here properly applied those factors within its sound discretion.

*Id*. at 76 (emphasis in original). What the District Court did here was strikingly similar. It reviewed the parties' affidavits and other parts of the record -- making express reference to Shinnar's affidavit in the decision itself -- and then applied the *Johnson* factors. JA807-809. There is simply no error to be found, despite Appellants' protestations to the contrary.

Lest there be any doubt, given the age of the *Trimper* case, that the process used by the District Court below was proper, this Court revisited this subject as recently as just two years ago. Specifically, in *Harwood v. American Airlines, Inc*., 37 F.4th 954 (4th Cir. 2022), this Court upheld a district court's fees ruling in which, precisely as in the instant case, plaintiff's counsel's hourly rate had been reduced by the Court, in part, "because th[e] case was not particularly 'complex.'" *Id*. at 960. *See also id*. at 961 ("The district court appropriately assessed the complexity of the case …."). And this dynamic is not unique to the Fourth Circuit. *See H.C. v. New York City Dept. of Ed*., 71 F.4th 120, 126-27 (2d Cir. 2023) ("The other component of the lodestar – the reasonable hourly rate – 'is the rate a paying client would be willing to pay,' after 'considering all pertinent factors, including the *Johnson* factors[.]' …. We … hold that a district court does not err when it considers the complexity of the dispute both when it evaluates the time reasonably expended as well as the reasonable hourly rate." (citations omitted)); *Lilly v. City of N.Y.*, 934 F.3d 222, 232 (2d Cir. 2019) (explaining that U.S. Supreme Court jurisprudence holds that "case-specific factors like the novelty or complexity of the matter are appropriately considered in determining the reasonable hourly rate or hours billed.").

Moreover, in light of Appellants' contention about the supposedly perfunctory nature of the District Court's analysis of the *Johnson* factors, *see* Appellants' Br. at 24, it is important to note that the above-quoted excerpt from the Court's decision

was not its only discussion of this subject. Rather, later in its ruling, the District Court <u>revisited</u> its finding that "the legal work conducted here was not particularly novel or complex, and it did not require skill beyond the typical case," *see* JA809, and provided additional comments about the straightforward nature of the case. According to the District Court,

> The bench trial was for a typical wage-and-hour case and lasted less than five days, and this was not a case in which there was a novel issue of law or a need for more than the typical amount of trial preparation. …. The limited defense, as reflected by the fact that Defendants called only three witnesses other than the individual Defendants, also reduced the number of hours needed for trial preparation. ….
>
> ….
>
> Here, the case was straightforward, presented no novel issues of law, had a limited number of testifying witnesses, and was defended by only a single attorney.

JA812-813. So, no matter how much Appellants might want the District Court's analysis to have been "arbitrary and conclusory," *see* Appellants' Br. at 24, it wasn't.

Additionally, the District Court's analysis was <u>accurate</u>. In their Brief, Appellants unsurprisingly fail and refuse to participate in any level of debate concerning the relative simplicity of this litigation. *See generally* Appellants' Br. This is because there's no legitimate argument to be made. As undersigned counsel noted in the briefing below:

> The case was not complex. In fact, undersigned counsel (who practices almost exclusively plaintiff's-side employment law, as a review of his cases before th[e] [District] Court will readily demonstrate) would

estimate that this was probably the most straightforward case he was handling during the time of its pendency. This case, unlike undersigned counsel's[,] say, discrimination cases, did not involve issues of intent or causally connecting retaliatory behaviors with protected activity. It was about how many hours [Appellants] worked and then "doing the math," if you will, to calculate the amounts owed in light of the wages paid and those not paid. There was, no doubt, work to be done to establish those hours by [Appellants'] counsel, and by undersigned counsel in trying to assist his clients in defending against the claims, but it was just not an especially difficult case, relatively speaking. Yet, … [Appellants], time and again, <u>sought</u> to <u>make</u> it <u>difficult</u>. But their over-the-top efforts don't make it so.

JA406-407 (emphasis in original). And here's a reminder of what Hoffman asserted:

There are many lawyers who take worker FLSA cases and do not otherwise take employment cases, principally because they believe the cases are easy. (This is not to say that they handle those cases well). If the goal is to achieve a fee that will incentivize counsel to take a case, query whether the competition for those cases should inform the reasonable hourly fee. Based on my review, this FLSA case could not have been more straightforward and that is true regardless of whatever the Defendants did to challenge the Plaintiffs – denials of coverage are easy to address in discovery and trial and claims of independent contractor status are relatively easy to evaluate and address in litigation.

….

[T]his very straightforward case would be highly desirable amongst the employment bar representing employees, with liability being fairly transparent. …. I see this case requiring no specific skill set and I would have been able to handle this case quite easily five years out of law school. ….

JA436-437. As this Honorable Court can readily see, these comments by undersigned counsel and Hoffman were adopted by, and are wholly consistent with, the findings of, the District Court below. This was the reality.

Appellants' counsel wants to pretend these dynamics don't matter.[18] But that's nonsensical. The reasonable hourly rate and fee to defend a jaywalking case would never be the same as the reasonable hourly rate and fee to defend a double homicide. The complexity of a case <u>has</u> <u>to</u> <u>matter</u>. This was not some multi-district litigation concerning wage and hour violations involving thousands of workers with thousands of different personal situations. Nor was it a discrimination case involving complex legal concepts, expert testimony, and the need to establish matters of intent and causation. Rather, to quote the District Court, it was "straightforward, presented no novel issues of law, had a limited number of testifying witnesses, and was defended by only a single attorney." JA813

The comments of a U.S. Magistrate Judge in another one of Appellants' counsel's wage and hour cases in which they sought high hourly rates are instructive:

> [W]hile I do not recommend that the Court accept Plaintiff's request for higher rates in this particular case, this is not to say that, in a different case, a departure – even a significant one – may not be appropriate. As this Court has acknowledged, while the guidelines are presumptively reasonable, they are not binding. For example, in an action such as *Duvall*, in which counsel: 1) undertook representation of a party who otherwise may not be able to find representation; 2) was able to achieve significant systemic reform; 3) establish significant new legal

---

[18] *Amici Curiae*, in their Brief, do endeavor to "take on" this subject on some level. *See Amici Curiae* Br. at 5-7. However, they are just plain wrong on both the facts and the law, for all of the reasons provided herein. For example, *Amici Curiae* argue that "the *Johnson* factors, including novelty or difficulty, are typically used to aid determinations of the reasonable number of hours, not determinations of a reasonable hourly rate …." *Id.* at 6. But this is patently incorrect, as repeatedly demonstrated in this Brief. *See, e.g., supra* Part V.B.

precedent; and/or 4) successfully certify a class, a significant departure may be appropriate.

*Ramnarine v. Rainbow Child Dev. Ctr. Inc.*, Civ. A. No. PWG-17-2261, 2022 WL 16709764, at *7 (D. Md. Nov. 4, 2022) (report and recommendation), *adopted by* 2023 WL 1416031 (D. Md. Jan 31, 2023).

Appellants' counsel act as though they are getting pushback from the bench on their desire for high hourly rates without any justification. However, that's just not the reality. They don't like the answers they are getting from the bench, but that doesn't make the answers wrong, much less constitute an abuse of discretion.

Another deficiency in Appellants' arguments is created by their overstating the meaning of some of the District Court's phrasing, accusing the Court of giving only "lip service" to matters Appellants claim (incorrectly) were dispositively accepted by the Court. *See* Appellants' Br. at 16. For instance, it is true that the Court stated as follows in relation to Shinnar's affidavit: "This declaration, which addresses the second, third, fifth, and ninth *Johnson* factors, provides support for the reasonableness of [Appellants' proposed] hourly rates." JA809. Appellants act as though the Court's reference to "support" in this finding renders the "supported" concepts and positions essentially unassailable. *See id*. at 11, 16, 22. However, support for a given set of propositions from one source does not preclude support

for opposing propositions coming from another -- such as Hoffman's Declaration[19] and all of the argument and legal citations in Appellees' opposition brief below. And it is abundantly clear that the District Court did not perceive the support provided by Shinnar's affidavit as being dispositive. This is readily established by the fact that at least three of the four factors that the Court referenced as being "supported" on some level by her affidavit -- factor two, which is "the novelty and difficulty of the questions raised," factor three, which is "the skill required to properly perform the legal services rendered," and factor nine, which concerns "the experience, reputation, and ability of the attorney," *see McAfee*, 738 F.3d at 88 n. 5 -- were then recounted by the Court as factors that ultimately mitigated <u>against</u> a finding in favor of Appellants' proposed higher rates. In undoubted reliance on Hoffman's Declaration and Appellees' argument -- not to mention its own knowledge and broader understanding of the case -- the Court stated as follows: "<u>Nevertheless, based on the present record and a consideration of the relevant *Johnson* factors</u>, the Court finds that the legal work conducted here was not particularly novel or

---

[19] Interestingly, when considering declarations from the same two affiants, Shinnar and Hoffman, in another case involving Appellants' counsel discussed above, *see supra* Part III, a fellow Judge on the District Court bench in Maryland concluded as follows: "As for evidence, M&A offers primarily the affidavit of Michal Shinnar, an employment attorney with over nine years of experience, who attests that the rates M&A requests are reasonable. …. However, the Court finds <u>more persuasive</u> the affidavit of Howard B. Hoffman, an employment attorney with 23 years of experience, which the defendants submitted." *Guillen*, Civ. A. No. DLB-19-2317, 2024 WL 1346838, at *3 (emphasis added).

complex, and it did not require skill beyond the typical case." JA809 (emphasis added). The Court's use of the word "nevertheless" makes it abundantly clear that, despite the "support" that may have been provided by Shinnar's attestations, there was still more evidence and arguments to be considered which weighed in the opposite direction.

In a similar vein, Appellants contend that the District Court "accepted Appellants' counsel's representations about its normal and customary billing rates" only then then turn around and disregard them. Appellants' Br. at 16. *See also id*. at 9, 11, 22-23. Whether the District Court full-on "accepted" counsel's supposedly standard rates or merely took them at face value, the Court did expressly account for them (as well as inflation) in its determination of "the reasonable hourly rates." JA809. And, in any regard, evidence of an attorney's supposed actual hourly rate has little bearing on a court's assessment of market or reasonable hourly rates anyway. *See Trimper*, 58 F.3d at 76 ("[T]he proper measure of fees is the prevailing market rate in *the relevant market*, and <u>not</u> the rate charged by the actual attorney in question." (italicized emphasis in original) (underlined emphasis added)). *See also* JA434 (Hoffman opined in Declaration that "no one would expect a reasonable lodestar rate to be the claimed hourly rate of an attorney (or the opponent's lawyer's hourly rate.)").

Lastly, Appellants' counsel also repeat in their Brief, as they argued to the District Court below, that there were three cases in which members of the District Court bench had awarded them higher rates, and that there was also a bankruptcy case in which high rates were awarded to another law firm. *See* Appellants' Br. at 8-10, 20. With regard to the cases where Appellants' counsel were awarded higher rates, not only was this argument wholly refuted in Appellees' briefing below, *see* JA402-404, which is incorporated herein by reference, but members of the District Court bench itself directly discounted the value of these cases as well. *See id*. *See also Ramnarine,* Civ. A. No. PWG-17-2261, 2022 WL 16709764, at *5 n.2 (report and recommendation) (distinguishing one of the cases cited by Appellants), *adopted by* 2023 WL 1416031; *Carranza v. Ramirez*, Civ. A. No. PWG-20-2687, 2022 WL 4080310, at *4-*5 (D. Md. Sept. 6, 2022) (distinguishing two of the cases cited by Appellants, and noting that "Mr. and Mrs. Melehy's experience and level of skill, though significant, also does not warrant an enhancement here, because the case did not involve any novel or particularly difficult questions"). These are all just red herrings.

As for the bankruptcy case, which is also highlighted by *Amici Curiae*, there was no fee-shifting to be had and counsel therein was simply seeking permission to receive its fees for the services provided to its own client, as shown on counsel's billing reports. *See Amici Curiae's* Addendum at Ex. 1 (Doc. 40-2). A filing by

another law firm using a different procedure in another type of case before a different type of lower court than the one at issue in this appeal just doesn't add much of value to this Honorable Court's decisional process.

As the Court might imagine, Appellees are not pleased with the $201,000-plus judgment for fees/costs that was secured by Appellants' counsel. And it is certainly awkward for Appellees to advocate, with this Brief, that said judgment should be upheld, as they believe the award was too high. However, Appellees did not appeal themselves for two reasons. First and foremost, Appellees did not believe that the hourly rates (or the sum of fees awarded), despite being substantially higher than they wanted, would be deemed unreasonable and subject to reversal by this Court. Second, Appellees did not want to incur any more attorney's fees than they absolutely must. Conversely, Appellants are obviously unencumbered by such concerns. Unlike Appellees, Appellants and their counsel do not want to end this litigation, viewing its continuation as a means to secure even more money than the sizable sum they've already been awarded. *See supra* Part III. Appellees are asking this Honorable Court to end the litigation for Appellants now by affirming the decision of the District Court.

## VI. CONCLUSION

For these reasons, and any further reasons presented in any oral argument that this Honorable Court may elect to hold, Appellants respectfully request that the decision of the District Court be affirmed.

Respectfully submitted,

_____ /s/ Neil R. Lebowitz _____

Neil R. Lebowitz
Lebowitz Law Firm
5850 Waterloo Road, Suite 140
Columbia, Maryland 21045
neil@lebowitzlegal.com
410-730-9010
*Counsel for Appellees*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. ___23-2309___    Caption: ___De Paredes, et al. v. Zen Nails Studio, LLC, et al.___

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ___12,999___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
___Microsoft Word___ [*identify word processing program*] in
___14-Point Times New Roman___ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) ___/s/ Neil R. Lebowitz, Counsel for Appellees___

Party Name ___Zen Nails Studio, LLC, et al.___

Dated: ___Sept. 17, 2024___