23-2309

# In the United States Court of Appeals for the Fourth Circuit

_____

FLOR I. ARRIAZA DE PAREDES;
FRANCISCO HERNAN TEJADA LOPEZ,

*Plaintiffs-Appellants*,

v.

ZEN NAILS STUDIO LLC; PHONZ NGUYEN;
LIHN NGUYEN,

*Defendants-Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## REPLY BRIEF OF APPELLANTS

OMAR VINCENT MELEHY
ANDREW BALASHOV
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Telephone: (301) 587-6364
Email: ovmelehy@melehylaw.com

MATTHEW B. KAPLAN
The Kaplan Law Firm
1100 N Glebe Road, Suite 1010
Arlington, VA 22201
Telephone: (703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com

*Attorneys for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ..............................................................................................1

    I.    THE TRIAL COURT DID NOT ACT IN ACCORDANCE WITH THE LAW AND WITHIN ITS DISCRETION WHEN IT BASED ITS FEE AWARD ON A NINE-YEAR-OLD MATRIX INSTEAD OF MARKET RATES .............3

    II.    PRIOR AWARDS ALONE CANNOT SET HOURLY FEE RATES ...........7

    III.    APPELLEES' EXPERT DECLARATION DOES NOT ESTABLISH THAT APPENDIX B RATES REFLECT CURRENT MARKET RATES ........11

CONCLUSION .................................................................................................12

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ..........13

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT CERTIFICATE OF SERVICE ..........................................................................14

# **TABLE OF AUTHORITIES**

Cases

*Blanchard v. Bergeron*, 489 U.S. 87 (1989)............................................................3

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................3

*White v. Beaver Cty.*, No. 2:17-cv-00998, 2020 U.S. Dist. LEXIS 120478 (W.D. Pa. July 9, 2020)……………………………………………………………….5

*Brandon v. Guilford Cnty. Bd. of Elections*, 921 F.3d 194 (4th Cir. 2019) ............10

*Burley v. Balt. Police Dep't*, No. SAG-18-1743, 2020 U.S. Dist. LEXIS 73539 (D. Md. Apr. 27, 2020) ........................................................................................7

*Carranza v. Ramirez,* No. PWG 20-cv-2687, 2022 U.S. Dist. LEXIS 161253 (D. Md. Sep. 6, 2022) ............................................................................................8

*Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2021 U.S. Dist. LEXIS 164219 (D. Md. Aug. 26, 2021) ...........................................................................................8

*De Simone v. VSL Pharms., Inc.*, Civil Action No. TDC-15-1356, 2022 U.S. Dist. LEXIS 179623 (D. Md. Sep. 30, 2022).............................................................8

*Farbotko v. Clinton Cty.*, 433 F.3d 204 (2d Cir. 2005) .............................................9

*Fowler v. Tenth Planet, Inc.*, No. 1:21-cv-02430-JRR, 2024 U.S. Dist. LEXIS 141652 (D. Md. Aug. 9, 2024) ..........................................................................9

*Green v. Cent. Towing*, *Inc.*, Civil Action No. 8:21-cv-00030-PX, 2023 U.S. Dist. LEXIS 60823 (D. Md. Apr. 5, 2023) ..................................................................8

*Guillen v. Armour Home Improvement, Inc*. Civ. A. No. DLB-19-2317, 2024 WL 3877603 (D. Md. Aug. 20, 2024) ................................................................. 2

*Harwood v. American Airlines, Inc.*, 37 F.4th 954 (4th Cir. 2022) .......................... 4

*Jiminez v. Express Check Cash, LLC*, No. PWG-17-2696, 2018 U.S. Dist. LEXIS 140471 (D. Md. Aug. 17, 2018) ................................................................. 7

*Mata v. G.O. Contrs. Grp., Ltd.*, No. TDC-14-3287, 2015 U.S. Dist. LEXIS 146976 (D. Md. October 29, 2015) ................................................................. 4

*Skapinetz v. Coestervms.com, Inc.*, Civil Action No. 17-1098-PX, 2021 U.S. Dist. LEXIS 80488 (D. Md. Apr. 27, 2021) ................................................................. 8

*US Foods, Inc. v. Crittenden*, No. BPG-18-987, 2019 U.S. Dist. LEXIS 99238 (D. Md. June 13, 2019) ................................................................. 7

# REPLY ARGUMENT
# INTRODUCTION

The trial court made a clear error of law when it awarded the rates set forth in the then nine-year-old unadjusted Appendix B without performing a market rate analysis. JA809. It did not find that Appendix B reflected current market rates for attorneys in the local community; there was no evidence that Appendix B reflected such rates; and indeed, the evidence indicated that Appendix B greatly understates market rates because it has not been adjusted in a decade. *Id*.

Appellees do not address Appellants' argument that the trial court summarily defaulted to Appendix B rates without doing a market rate analysis nor do they dispute that between 2014, when Appendix B rates were last updated, and late 2023 when the District Court made its Appendix B-based fee award, the cost of legal services increased substantially. Although somewhat difficult to discern from their brief, Appellees appear to argue that: (1) the trial court acted within its discretion – based on the *Johnson* factors – when it awarded the nine-year-old Appendix B rates; and (2) the trial court had an adequate basis for presuming that Appendix B rates are equivalent to current market rates because of an expert declaration Appellees submitted (but which was ignored by the District Court) and because it is supposedly commonplace in the District of Maryland for attorneys to seek Appendix B rates. Appellees' Br. at 8-46. These arguments miss the point. The trial court used the

*Johnson* factors, not as part of a bona fide market rate analysis, but to support its mistaken conclusion that Appellants' counsel should receive nine-year-old Appendix B rates, instead of prevailing market rates, as the Supreme Court and this Court mandate.[1]

---

[1] Appellees spend seven pages of their brief discussing an issue which neither side appealed – the reasonableness of the hours expended by Appellants' Counsel. And they attack Appellants' Counsel's reputation based on a decision in another case – *Guillen v. Armour Home Improvement, Inc*. Civ. A. No. DLB-19-2317, 2024 WL 3877603 (D. Md. Aug. 20, 2024) – which was decided eight months after the decision in this case. Appellees' Br. at 2-8. In contrast to *Guillen*, the trial court in this case found that Appellants "made a meaningful effort to evaluate the reasonableness of the hours for which they seek compensation." JA811.

Moreover, Appellees' position that this was not a complex case, Appellees' Br. at 41, is seriously undermined by the record in this case, and most notably the testimony of their own expert – Howard Hoffman – who agreed Appellees were not "blameless" as their "liability was not conceded", and they put Appellants through their "burdens of proof," ultimately over the course of a five-day bench trial. JA442. Even these statements by Hoffman fail to capture the full scope of the Parties' dispute which was caused, in part, by Appellees' refusal to concede basic factual issues. Appellees aggressively litigated this case from the onset by: (1) pleading 20 affirmative defenses, JA51-56; (2) disputing that Appellees were employers, JA169-171, 271-272; (3) disputing that Appellants worked overtime hours, JA169-171, 271-272; (4) creating and producing fabricated time records (records they did not introduce in evidence because they were fake) which forced Appellees to retain a forensic document expert and conduct discovery on the issue, JA169-173, 755-757; (5) arguing that the failure to pay an overtime premium was in good faith, JA173, 274; (6) disputing that the FLSA violation was willful, JA52; and (7) disputing that their business was an enterprise engaged in commerce under the FLSA, JA755-757.

I. **THE TRIAL COURT DID NOT ACT IN ACCORDANCE WITH THE LAW AND WITHIN ITS DISCRETION WHEN IT BASED ITS' FEE AWARD ON A NINE-YEAR-OLD MATRIX INSTEAD OF MARKET RATES**

Appellees argue that the trial court had discretion to presume – and therefore summarily conclude – that the District Court's significantly outdated fee schedule represents current market rates. Appellees' Br. at 34-46. Specifically, Appellees contend that, based on the trial court's application of three *Johnson* factors – novelty, complexity, and the rate expectations of Appellants' counsel based on the publication of Appendix B, JA809 – it had virtually unfettered discretion to select whatever rates it saw fit, regardless of whether those rates are tethered to market rate evidence. Appellees' Br. at 36-40. The trial court did not have such unfettered discretion.

Before addressing this argument, it is important to place the trial court's rate determination – and its use of the *Johnson* factors to justify its conclusion that Appendix B represents current market rates – in the proper context. There is no dispute that Appellants were entitled to be awarded fees at prevailing market rates. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). And Appellants agree that *Johnson* allows the District Court to consider market rate evidence and then fine-tune the rate determination (either upward or downward) based on individualized factors unique to the case and the counsel prosecuting it. *See Blanchard v. Bergeron*, 489 U.S. 87, 93-95 (1989); *Harwood v. American Airlines, Inc.*, 37 F.4th 954, 960-62 (4th Cir.

3

2022). However, the District Court misapplied the *Johnson* factors to set the award below market rates, contrary to the Supreme Court's and this Court's mandates.

*Mata v. G.O. Contrs. Grp., Ltd.*, No. TDC-14-3287, 2015 U.S. Dist. LEXIS 146976 (D. Md. October 29, 2015), a 2015 case decided by the same trial judge (Chuang, J.), illustrates this point. *Mata* was very straight-forward, as it was a FLSA default judgment case. *Id.* at *1. In *Mata*, Judge Chuang reduced plaintiffs' lead counsel's rate to what he deemed the then current "market rate" – the top of the still unchanged Appendix B range – which 8 years ago was surely much closer to actual market rates than it is today. *Id.* at *18-20.[2] However, when *Mata* is compared with this case (decided eight years later), the problem with the trial court's use of the *Johnson* factors to justify an award at the same Appendix B rates becomes apparent. After adjustment for inflation, the rates awarded in *Mata* were much higher in real terms than those awarded in this case.[3] Thus, the attorneys in *Mata* were effectively

---

[2] Just like this case, the *Mata* court relied upon two *Johnson* factors – case novelty and complexity – and reasoned that the fees sought "are outside the range recommended by [the] Court" and it concluded that "a departure from this Court's normal fee range is unwarranted." *Id*. at *19.

[3] At the time Appellants filed their motion for attorneys' fees (March 31, 2023), the Legal Services Index ("LSI") data from the Bureau of Labor Statistics web site, which Appellants presented to the trial court along with their motion (and which showed the 28% increase in cost of legal services), was only available through December 31, 2022. JA266-69, JA805-816. Thus, at the time the trial court issued the fee decision (November 28, 2023), there were 11 months of LSI data missing from the Appellants' LSI analysis and the 28% increase did not represent the total increase in the cost of legal services between July 1, 2014, and the date the trial court issued its decision. Moreover, the missing 11 months of data happen to be from a

4

awarded higher rates for a default case than Appellants were awarded in a case that went to trial.

Because this case was indisputably more complex than *Mata*, at a minimum, Appellants' counsel should have received the same rates in real terms, instead of lower rates. *Mata* involved the simplest of FLSA cases – one where there was a default judgment – and thus, no adversarial process, no motions practice, no discovery, no trial, and no settlement negotiations. *Id.* at *1. In contrast, this case involved all of the above plus a five-day trial. *White v. Beaver Cty.*, No. 2:17-cv-00998, 2020 U.S. Dist. LEXIS 120478, at *17 (W.D. Pa. July 9, 2020) (in a single-plaintiff FLSA case, where the plaintiff prevailed at trial and sought fees, noting that "in the Court's experience, few cases that go to trial in a federal district court are, or should be, classified as simple.").

Moreover, this case was exceptionally adversarial and therefore complex. While it is true that this case could potentially have been less complex, Appellees' made it far more complex by: (1) forcing the case to trial; (2) pleading 20 affirmative defenses, JA51-56; (3) disputing that Appellees were "employers", and that Appellants worked overtime hours, JA169-171, 271-272; (4) fabricating time records which forced Appellants to retain a forensic document expert which

---

period of historically high inflation. Br. of Amicus Curiae, Doc: 36 at 14-15, Amicus Exhibit 3, Doc: 36 at 57-58.

ultimately convinced Appellees' not to introduce the fabricated records in evidence, JA169-173, 755-757; (5) invoking the good faith defense, JA173, 274; (6) disputing that the FLSA violation was willful; and (7) disputing that their business was a covered enterprise under the FLSA, JA755-757. Moreover, the case involved extensive discovery and numerous discovery disputes. JA167-173, 200-223.

Appendix B rates have not changed since July 2014. Given inflation in the market for legal services, how can it be that a top of the guidelines rate was the market rate in 2015 for the simplest of FLSA cases (*Mata*, a default case), while the top of the same exact guideline rate, unadjusted for inflation, was also the market rate in a more complex FLSA case (this case) decided eight years later? There is simply no legal or logical basis for the District of Maryland to continue awarding outdated, below-market Appendix B rates. If this Court were to affirm the decision below and the Maryland federal courts continued to apply Appendix B rates for years to come, with each passing year, plaintiffs' counsel in fee shifting cases would, in real terms, receive less and less. Thus, even if Appendix B rates were sufficient in 2014 to attract competent counsel to take cases like this, with each year that passes those rates fall further behind market rates, potentially resulting in more and more attorneys leaving the field to pursue other cases where they are compensated at market rates.

Furthermore, the trial court's use of the third *Johnson* factor to support its decision – that Appellants' counsel should have expected to receive Appendix B rates when they took the case because those rates are published in the District Court's Local Rules, JA809 – is circular reasoning. The District Court's premise that Appendix B rates are equivalent to market rates cannot serve as its proof. And it was clear legal error to use Appendix B rates as a factor in setting market rates, because they bear no relationship to prevailing market rates and should not be part of the calculus. Under this same flawed reasoning, as long as Appendix B rates remain unadjusted for inflation, the District Court can always claim that counsel's rate expectations are set by Appendix B; it can always use that as a basis for continuing to award outdated Appendix B rates; and the cycle will continue.

## II.  PRIOR AWARDS ALONE CANNOT SET HOURLY FEE RATES

Citing District of Maryland decisions, Appellees contend the ten-year-old Appendix B rates reflect market rates because it is supposedly "commonplace" for attorneys in the District of Maryland to seek no more than these rates. Appellees' Br. at 24-34. However, the District Court did not make the factual finding that in most cases the rates requested were within the Appendix B brackets and it did not say that this was one of its reasons for refusing to deviate from the Appendix.

Moreover, in numerous other cases, attorneys entitled to a fee-shifting award have indeed asked for, and been denied, compensation at rates higher than those in

7

Appendix B. *See, e.g., Jiminez v. Express Check Cash, LLC*, No. PWG-17-2696, 2018 U.S. Dist. LEXIS 140471, at *14 (D. Md. Aug. 17, 2018) (Grimm, J.) (in a FLSA case, plaintiffs' counsel sought higher rates, but the court awarded Appendix B, finding that "this Court has established rates that are presumptively reasonable for lodestar calculations"); *US Foods, Inc. v. Crittenden*, No. BPG-18-987, 2019 U.S. Dist. LEXIS 99238, at *18 (D. Md. June 13, 2019) (Gesner, J.) (in contract dispute attorneys sought rates above Appendix B, but the court awarded Appendix B rates because they were "presumptively reasonable"); *Burley v. Balt. Police Dep't*, No. SAG-18-1743, 2020 U.S. Dist. LEXIS 73539, at *13 (D. Md. Apr. 27, 2020) (Gallager, J.) (attorneys sought rates above Appendix B for sanctions motion, but the court awarded Appendix B rates because the rates sought "significantly exceed the presumptively reasonable ranges set forth in . . . Appendix B"); *Skapinetz v. Coestervms.com, Inc.*, Civil Action No. 17-1098-PX, 2021 U.S. Dist. LEXIS 80488, at *21 (D. Md. Apr. 27, 2021) (Xinis, J.) (the court rejected attorneys' claims for higher rates and awarded fees at Appendix B range because that was the "presumptively reasonable range"); *Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2021 U.S. Dist. LEXIS 164219, *10 (D. Md. Aug. 26, 2021) (Bredar, J.) (rejecting evidence of higher market rates because Appendix B rates are "presumptively reasonable" despite plaintiffs pointing out that Appendix B was seven years old and had not been adjusted for inflation); *Carranza v. Ramirez,* No. PWG 20-cv-2687,

2022 U.S. Dist. LEXIS 161253, *15 (D. Md. Sep. 6, 2022) (Grimm, J.) (rejecting claim for higher rates and awarding Appendix B noting that "the fact that the Appendix B rates were set eight years ago does not automatically mean they no longer reflect market rates"); *De Simone v. VSL Pharms., Inc.*, Civil Action No. TDC-15-1356, 2022 U.S. Dist. LEXIS 179623, at *16 (D. Md. Sep. 30, 2022) (Chuang, J.) (in patent-like case, court rejected claims for higher rates because the work was not novel or complex so as "to warrant the use of hourly rates above those contemplated by the Local Rules"); *Green v. Cent. Towing, Inc.*, Civil Action No. 8:21-cv-00030-PX, 2023 U.S. Dist. LEXIS 60823, at *3 (D. Md. Apr. 5, 2023) (Xinis, J.) (court declined to award rates above Appendix B because, even after nine years, it "sets forth a presumptively reasonable range of hourly rates"); *Fowler v. Tenth Planet, Inc.*, No. 1:21-cv-02430-JRR, 2024 U.S. Dist. LEXIS 141652, at *5 (D. Md. Aug. 9, 2024) (Coulson, Mag.J.) (despite Appendix B being ten years old, declining to award rates outside the guidelines for Howard Hoffman's associate attorney).

Given that District of Maryland decisions indicate that, absent unusual circumstances, fees must be within the Appendix B brackets, regardless of prevailing market rates, practitioners are discouraged from seeking higher rates because such efforts will likely not be successful. Thus, the continued use of an outdated matrix as a measure of current market rates is a self-fulfilling prophesy: the more the

9

District Court doubles down on its adherence to Appendix B, the more likely it is that practitioners will reluctantly accept below market rates in fee-shifting cases. While prior fee awards can be considered, parties requesting awards under fee-shifting statutes are entitled to rates established by the market, not by judicial fiat unsupported by evidence. Simply "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [a fee shifting statute] and compensation available in the marketplace." *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005). This is exactly what has happened in the District of Maryland.

The fact that some attorneys seek Appendix B rates in some cases does not mean that applying Appendix B is consistent with Congress's intent when it enacted fee shifting statutes to "enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Brandon v. Guilford Cnty. Bd. of Elections*, 921 F.3d 194, 199-200 (4th Cir. 2019) (quoting *Kay v. Ehrler*, 499 U.S. 432, 436 (1991)). If rates are artificially depressed, some meritorious cases will likely not be litigated at all because plaintiffs' attorneys will not find them economically viable. *See also* JA436 (Appellees' expert Hoffman opining that while he believes more lawyers are taking FLSA cases over other employment cases because they believe they are "easy," that does not mean those lawyers "handle those cases well.").

## III. APPELLEES' EXPERT DECLARATION DOES NOT ESTABLISH THAT APPENDIX B RATES REFLECT CURRENT MARKET RATES

Appellees argue that the trial court acted within its discretion when it summarily concluded that Appendix B rates were equivalent to current market rates, because the declaration from their expert, Howard Hoffman, JA427-447, supposedly supported that conclusion. Appellees' Br. at 18-23. But the trial court did not rely on the Hoffman declaration. Indeed, it never mentioned it. This is not surprising since Hoffman's equivocal declaration was far from a compelling defense of Appendix B rates.

For example, Hoffman agreed with Appellants that Appendix B is in need of adjustment for inflation: it is "nine years out of date and deserving of judicial review." JA437-438 ¶ 24. And Hoffman stopped short of affirmatively stating that Appendix B was consistent with current market rates. *See* JA427-447. In fact, he agreed that attorneys' normal billing rates – in this case much higher than Appendix B rates – are a useful starting point for determining a reasonable rate, and he claimed (despite sworn declarations confirming those rates) to have insufficient information to determine whether Appellants' counsel actually charged paying clients their normal and customary billing rates. JA433. He also acknowledged that there were circumstances when Appellants' counsel's rates or higher rates would be reasonable such as: (1) when corporate law firms are involved, or (2) where a FLSA case is precedent setting, or (3) if the case involves a class or collective action, or (4) if the

case faces long and difficult odds, or (5) if lawyers would otherwise be deterred from taking the case. JA437-39.

## CONCLUSION

For the foregoing reasons, Appellants ask that the Court reverse the decision of the trial court awarding Appellants' counsel Appendix B rates and remand the case to the trial court with instructions that it disregard Appendix B and award Appellants fees at prevailing market rates.

Respectfully Submitted,

*/s/Matthew B. Kaplan*
Matthew B. Kaplan
VSB No. 51027
The Kaplan Law Firm
1100 N. Glebe Rd., Suite 1010
Arlington, VA 22201
Tel: (703) 665-9529
mbkaplan@thekaplanlawfirm.com

/s/Omar Vincent Melehy
Omar Vincent Melehy
Bar No.: 5712

/s/Andrew Balashov
Andrew Balashov
Bar No.: 19715

Melehy & Associates, LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel.: 301-587-6364
Email: ovmelehy@melehylaw.com
*Attorneys for Appellants*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(1)(E) and the word limit of Fed. R. App. P. 27(d)(2)(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,463 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-Point Times New Roman Font.

/s/Andrew Balashov
Andrew Balashov
Attorney for Appellants
Dated: October 15, 2024

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## CERTIFICATE OF SERVICE

The undersigned being duly sworn according to law and being over the age of 18, upon oath depose and say that:

On October 15, 2024, Counsel for Appellants electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following CM/ECF users:

Neil Lebowitz, Esquire
*Counsel for the Appellees*

/s/Andrew Balashov
Andrew Balashov